CASE 24.—ACTIONS BY THE CITY OF HICKMAN, AND BY DR. S. K. DAVIDSON AND OTHERS AGAINST THE CUMBERLAND TELEPHONE AND TELEGRAPH CO., TO FORFEIT ITS FRANCHISE.—June 10.

## Cumb. Tel'p & Tel'g Co. v. City of Hickman

Appeal from Fulton Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment in first case affirmed and in the second case reversed in part.

1. Municipal Corporations — Ordinances — Adoption — Constitutional Law.—Constitution, section 46, a part of the subdivision devoted to the legislative department, providing that all bills shall be read in each house on three different days, etc., does not apply to proceedings in municipal legislative bodies.
2. Constitutional Law—Construction.—Interpretations of Consti-

tutions by rules of implication, being most hazardous, should be employed only in those instances where the subject-matter and language leave no doubt that the intended meaning of the clause under investigation may be reached in that way only and with approximate certainty.

3.  Municipal Corporations—Franchises—Adoption.—Constitution 1891, section 164, requires a municipality, before granting a franchise, to advertise for bids therefor, and to award it to the highest and best bidder. ' Ky. Stats. 1903, section 3636, prohibits the adoption of a franchise ordinance on the day of its introduction or within five days thereafter; or except at a regular meeting. August 16th a city council, determined to grant a telephone franchise, directed an advertisement for bids therefor to be received September 3d, the next regular meeting, and' an ordinance detailing the privileges to be granted and the term was introduced and laid over to the regular meeting, the conditions, etc., corresponding to those directed to be advertised. September 3d, a bid was accepted, and the ordinance was adopted. Held, that the franchise was granted in strict conformity to such constitutional and statutory requirements; the ordinance not being void as having been passed on the day of its introduction because it was passed the same day the franchise was sold.

4.  Same.—A city telephone franchise having lapsed for the grantee's failure to commence work within a specified time, an ordinance waiving the forfeiture and extending the time for commencing work in consideration of a reduction of the rates to subscribers, but not granting additional privileges, was not void as the granting of a franchise without a sale, and because passed on the day it was introduced, within Constitution 1891, section 164, requiring a municipality before granting a franchise to advertise for and receive bids therefor and to award it to the highest bidder, and Ky. Stats. 1903, section 3636, prohibiting the adoption of a franchise ordinance on the day of its introduction.

5.  Pleading—Prayer for Relief—Purpose.—A prayer for relief defines the legal right claimed by plaintiff to guide the court in granting or refusing relief, and apprises defendant as to what is demanded of him.

6.  Judgment—Default Judgment—Relief—Alternative Prayer.—A city having prayed that defendant telephone company be enjoined from doing business in the city "or," that it be enjoined from charging higher rates than fixed in its franchise, on the company's default, the court properly granted the latter relief.

7. Specific Performance—Exercise of Telephone Franchise.—
Citizens of a city may sue to compel a telephone company to
exercise its franchise by operating its plant; the franchise
being granted by the city for the citizens' benefit and in
consideration of the service to be furnished them, and the
remedy at law in behalf of the citizens for the company's
breach of contract being inadequate.

8. Telegraphs and Telephones—Telephone Franchise—Service—
Construction.—A city telephone franchise providing that the
grantee should connect the central exchange, and thereby
each subscriber's instrument with other specified towns and
cities, and specifying monthly rates of $1.50 and $2.50 for
residence and business phones, respectively, does not entitle
subscribers to service to such other towns and cities without
additional charge, but merely gives them the privilege of
using long-distance connections from their phones.

WHEELER, HUGHES & BERRY for appellant.

W. L. GRANBERRY of counsel.

POINTS AND AUTHORITIES.

1. An ordinance creating a franchise by a city of the sixth
class, passed on the night of its introduction is void. (Maraman
v. Ohio Valley Telp. Co., 25 Ky. Law Rep., 784; East Tenn. Telp.
Co. v. Anderson Co. Telp. Co., 22 Ky. Law Rep., 418.

2. A franchise ordinance passed at a called meeting of the city
council is inhibited by law. (Section 3636, Kentucky Statutes.)

3. In the passage of ordinances where cities are legislating in
matters pertaining to the state, as many passages must be given
to such ordinance as is required by the Constitution of bills
passed by the Legislature. (Section 42 of the Constitution.)

4. Where a corporation is wrongfully exercising a franchise it
is its duty to cease doing so and to obey the law. (Thomas v.
Railroad Company, 101 U. S., 71.

5. A chancellor has no power to compel a telephone company
to exercise a franchise by operating its plant with or without a
franchise.

6. The power of the court is limited to forfeiture of a franchise
rightfully obtained or compelling the contracting parties to abide
by their agreement.

ROBBINS & THOMAS for appellees.

Cumb. Tel'p. & Tel'g. Co. v. City of Hickman.

### AUTHORITIES CITED.

1. The remote vendor of the appellant never procured any fran-chise, privilege or right from the city of Hickman to construct therein a telephone system, because the ordinance granting the right and embodying the contract was not legally passed.  (Ken-tucky Statutes, section 3666; Kentucky Statutes, section 3633; Constitution, section 164; 25 Ky. Law Rep., 784; 22 Ky. Law Rep., 418.)

2. It is alleged that if the original grantee and acceptor of the franchise or privilege procured a valid one, he possessed no power in law to assign or transfer it.  (Cyc., vol. 19, 1452; 13 Bush, 185; 6 Ky. Law Rep., 295; 130 Illinois, 42; 38 Michigan, 154; 17 Wash-ington, 661; 10 Wallace (U. S.) 38; Thompson on Corporations, sections 5341, 5374 and 5375; Constitution, 201; Constitution, section 203; Kentucky Statutes, sections 560 and 562; 21 Ky. Law Rep., 300; 31 Ky. Law Rep., 783; 100 Southwestern, 310; Thompson on Corporations, sections 257, 5352, 5362, 5369 and 8294; 84 Ky., 176; 95 U. S. Supreme Court Reports, 644; 127 Federal Reporter, 187.)

3. It is claimed that there is a defect of parties plaintiff.  (89 Kentucky, 340; 23 Ky. Law Rep., 2149; Civil Code, section 25; Thompson on Corporations, sections 6679, 6680 and 7830; 19 Wendel, 56; 11 Illinois, 202; 48 Illinois, 233; 3 Indiana, 452; 7 Iowa, 186; 11 Louisiana, 141; Dillon on Municipal Corporations, section 695; High on Extraordinary Remedies, sections 431 and 432.)

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR— Reversing.

Hickman, a city of the fifth class in this Common-wealth, was asked by promoters of the scheme to be permitted to install a public telephone exchange within the corporation.  In order to comply with the requirements of the law, the town council was duly called in extra session on August 16, 1894, when the proposition was regularly presented to the city.  The council determined to grant the franchise.  It directed the city clerk to advertise for the public sale of the franchise on September 3, 1894, which was the date

of the next regular meeting of the council.  At this
August 16th meeting there was introduced an ordi-
nance detailing the privilege or franchise to be
granted, its term, 20 years, and the conditions on
which it was to be granted.  The ordinance was laid
over till the September 3d meeting.  The terms, con-
ditions, etc., mentioned in it, were identical with those
directed to be advertised, and which were advertised
by the clerk for sale.  The sale was made as adver-
tised, and the bid reported to the council for action
on September 3, 1894.  The bid, being acceptable, was
approved by the council, which thereupon unani-
mously adopted the ordinance introduced on August
16th preceding, granting the franchise.  Among the
conditions contained in the ordinance were these two:
(1) That work should be begun within six months to
install the telephone plant, and be finished within one
year from the passage of the ordinance; (2) that the
rate charged each subscriber within the city should
not exceed $2.50 per month.  There were other con-
ditions not involved in this consideration, save one
clause which was relied on by the plaintiffs below
as a condition of the grant, and which will be noticed
more particularly in its appropriate place in this
opinion.  The successful and accepted bidder styled
himself J. J. Downey, trustee.  Subsequently he sold
his holdings to Chowning & Wright, who assumed
the obligations imposed upon Downey, trustee.  The
owners of the franchise were about to let it lapse by
their failure to begin work upon the plant within the
time specified in the ordinance, when they besought
the city council to grant them an extension.  This the
council did on March 11, 1895, but on the condition
that the maximum charges to subscribers to the sys-
tem in the city should not exceed $1.50 a month for

residences, $2.50 for business houses, and, where one subscriber had a phone in his residence and one in his business house also, the maximum charge for the two should not exceed $3.50 a month. This condition was accepted by Chowning & Wright, and the plant was thereafter duly installed and set in operation. Later on the plant was sold to appellant, and the franchise assigned to it. After running the system for some time on the basis fixed in the ordinance of September 3, 1894, as amended by the one of March 11, 1895, appellant increased its charges to its subscribers above the maximum fixed in the latter ordinance. Whereupon the city brought an action in equity against appellant, setting out the sale and the granting of the franchise, and the terms and conditions thereof, alleging the breach of the terms by appellant, to the oppression of the citizens of the plaintiff city, and couched the prayer of its petition in the following language: "Wherefore the plaintiff prays that it be adjudged that the defendant has violated its franchise, and no longer has the right to do business in the city of Hickman, and that it be required to remove its poles and wires from the streets and passways of the city, and enjoined from continuing in business in the city, if this can be done; but, if it cannot be done, then it prays that the defendant be enjoined and restrained from charging its customers more than the amounts fixed in the franchise and amendments thereto, and that it be required to fix reasonable and uniform rates for all citizens served by it, and it prays for all necessary and proper relief." The defendant failing to answer, the allegations of the petition were taken as confessed, and the case was submitted to the court for judgment. The court adjudged that, by the terms of the ordinance

granting the franchise being operated by appellant, the franchise was to continue for 20 years from September 3, 1894; that appellant was restricted to a charge not exceeding $1.50 a month for residences, or $2.50 a month for business houses, or $3.50 a month where both were supplied with phones to the same subscriber; and that appellant had exceeded these charges. It was thereupon adjudged, as relief, that appellant be enjoined from charging more than the prices above named and as fixed by the amended ordinance of March 11, 1895. When this judgment was entered, appellant closed its exchange and attempted to abandon its franchise. At this juncture appellees Davidson and others filed their suits in equity, on their own behalf and on behalf of all other citizens of Hickman, setting out the foregoing facts, and asked as relief that the defendant (appellant) company be enjoined and restrained from discontinuing its service to the citizens who were subscribers and would be during the remainder of the contract period of 20 years, and that the company be required to carry out its contract in that behalf. The result of this last suit was a judgment in favor of the plaintiffs, enjoining the removal of the poles, wires etc., by the defendant, and requiring it to continue for the remainder of the 20 years' service to the citizens of Hickman at a uniform charge of not exceeding that fixed in the amended ordinance of March 11, 1895. The appellant has prosecuted appeals from each of the judgments above recited.

Appellant's contentions against the judgments are that the ordinance granting the franchise was passed on September 3, 1894, was void because (a) it was not passed in conformity to section 46 of the Constitution; (b) that it was passed at the same session

at which it was introduced, thereby coming in conflict with section 3636, Ky. St. 1903. It also contends that the judgment by default was not authorized by the prayer of the petition and was void, or at least erroneous. As to the last judgment, it contends, in addition, that a court of equity has not the power to compel a telephone company to exercise its franchise by operating the plant, but that the only remedy is to forfeit the franchise. These questions will be discussed in the order in which they are presented.

Appellee's first contention is based upon the analogy between ordinances of a public and political nature, enacted by municipalities in virtue of the power conferred upon them by the Legislature, and similar laws when passed by the Legislature itself. Therefore, it reasons, these precautions deemed essential to protect the public from improvident action by the Legislature, and which the Constitution has instituted as checks upon such legislation when attempted by the General Assembly, must by the force of the same public consideration be applied to town councils when they come to legislate. Section 46 of the Constitution invoked by appellant under this head provides that all bills must be printed; reported upon by a committee; read at length on three different days in each house, and shall on their final passage receive the votes of at least two-fifths of the members elected to each house, etc. The particular point sought to be applied here is that the ordinance should have had three readings, on as many different days, before it could be passed. There is no reason why, if one of the features of section 46 applies to town council proceedings, all would not. It would seem to be a sufficient answer to appellant's contention to say that the section is part of the subdivision

devoted to the legislative department, the General Assembly. The section is not only inapplicable to the extent of being impossible of application to town councils, but it shows that it was not intended to apply to any legislative body, but the General Assembly of the Commonwealth. Town councils of several of the classes of cities have not two bodies. Nor does there seem to be the same ground for interposing such elaborate safeguards in the procedure of these minor bodies which are composed of but few members, sitting in public session in the midst of their constituents, also comparatively few in number. But, let that be as it may, we find no language in section 46 indicating that the convention intended it to apply to proceedings in municipal legislative bodies. Interpretations of Constitutions by rules of implication are most hazardous, and, if ever employed at all, it ought to be done in those instances only where the subject-matter and language leave no doubt that the intended meaning of the clause which may be under investigation may be reached in that way only, and be reached in that way with approximate certainty. This section has never been treated by the courts, the Legislature, or the town councils as applying to the latter. We have no doubt that it was not intended to apply to them.

The other argument of the appellant as to the regularity of the passage of the ordinance is that, as the ordinance granting the franchise was passed the same day that the franchise was sold (after it was sold), it was passed on the same day as of its introduction. To establish a basis for this argument it is necessary for appellant to also establish its assumption that, until an ordinance (or resolution) is passed defining or creating a franchise, such franchise cannot

be offered for sale; and therefore that the action of
the council on August 16th, directing the advertise-
ment of the franchise for sale, in advance of an ordi-
nance or resolution creating or setting apart, the
franchise which it was proposed to sell, was void.  It
will be conceded that, but for the action taken at the
meeting of August 16th, the action taken on Septem-
ber 3d, would have been void, because of section 3636,
Ky. St. 1903, which provides: "No ordinance and no
resolution granting any franchise for any purpose,
shall be passed by the city council on the day of its
introduction, nor within five days thereafter, nor at
any other than a regular meeting.  * * *" September
3d was the date of the regular meeting.  To get a
proper survey of the question we need to go back a
step.  What is the franchise which the section of the
statute treats of, and which is the subject of all this
legislation, and why the necessity for its public sale?
The franchise to operate a telephone exchange in a
city, which franchise the city may grant, is not the
same thing as the franchise to do the thing when
granted by the State.  As to the latter, the right to
exist as a corporate being, to exercise eminent domain,
to carry on a business of a quasi public nature, these
attributes and rights conferable by sovereignty
only, may be said to constitute a franchise.  But none
of these can be given by a municipal corporation.  Its
powers are limited.  Its most complete exclusive
authority may be said to be over its streets and other
public ways.  It may grant privileges with respect
to the proper occupancy of such places not inconsist-
ent with their enjoyment for the primal uses to which
they were dedicated.  The municipality may say
whether it will allow telephone wires to be stretched
over its streets, and if so, at what height, and on

which side of the street or whether to be confined in conduits beneath or along the surface. This right, which is most akin to a right of way, is the subject of grant, which partakes, in turn, of the nature of a contract. Formerly municipalities granted such easements and privileges inconsiderately, or made them the subject sometimes of questionable jobbing. The people of the municipalities were thereby frequently imposed upon. To mitigate such evils, the Constitution of 1891 provided (section 164): "No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway." This section, though self-operative (Nicholasville v. Board of Council, 36 S. W. 549, 38 S. W. 430, 18 Ky. Law Rep. 592), was the basis, it may be supposed, for the adoption of section 3636, Ky. St. 1903, supra; the latter section providing a more secure method of doing what the Constitution mandatorily required. Reading the two sections together in view of their purpose, we find that it is not essential to the granting of a franchise by the city that it should before offering it for sale first "create" the franchise. On the contrary, the Constitution (section 164) indicates that the city should first advertise for bids, which includes the necessity of setting forth the nature of the proposed franchise, and the terms on which it is to be exercised, then expose the proposed franchise

for sale publicly to the highest and best bidder, then, if the bids are acceptable, and one is accepted, grant the franchise to the accepted bidder. The statute amplifying the procedure (the details of which are not touched upon at this point by the Constitution) requires the ordinance or resolution granting the franchise to be accepted only at a regular meeting of the council, after it shall have been introduced and laid over for at least five days. The procedure in the case at bar measures exactly up to these requirements. The proposed ordinance defining the franchise which the city intended to grant should acceptable bids be received therefor was introduced at a meeting held more than five days before the regular meeting at which it was passed. The city directed the proposed franchise to be advertised for public competitive sale, which was done. The bids were acceptable, and, when the bids were canvassed and one was accepted, the council in regular session adopted by the vote of more than three of the members the ordinance granting the franchise. We do not mean to intimate that, if the city had pursued the course of defining or "creating" the franchise by an ordinance adopted before the advertisement and sale, such procedure would have been irregular. Strictly, a franchise could not be "granted" until there was a grantee to take it. Such an ordinance would be merely declaratory of the municipal purpose, but could confer no rights on anybody until there was a sale of the franchise as required by section 164 of the Constitution. Rights, mere incorporeal things, can not be carved out and set apart as a log might be hewn. But they will depend upon the power of the grantor to create, and of the consent and capacity of the grantee to take. When so granted they may then be regarded

as separated from the general body from which they were taken, and as having become the absolute or qualified property of the grantee. We conclude that the granting of the franchise in the manner done in this case was regular, and in strict conformity with the requirements of the Constitution (section 164) and statute (section 3636, Ky. St. 1903).

Appellant contends that the ordinance of March 11, 1895, was void, because it was also the granting of a franchise without sale, and because the ordinance was passed on the same day it was introduced. If the ordinance granted any additional privilege in the streets and public places of the city, there would be irresistible force in appellant's contention here; or, even if there was some material change in the terms of the grant, so as that the city was or might have been prejudiced by the fact, a very grave question would arise whether such an ordinance was not in effect the granting of a franchise without a sale. But we do not find such to be the case here. The grantee had agreed to certain conditions as part consideration for this grant. One of them, the rate of tolls, was of particular interest to the public; in other words, the city. The other condition was as to the time within which work on the plant was to be begun. The latter was not of so much importance to the city, except as a kind of security that the bid was in good faith. It was a condition which the city might have been justified in not exacting the penalty for its breach, if the delay had not been material. Still it was a matter of importance to the grantee, as it weakened his hold upon his franchise. We think it was competent for the city to waive the forfeiture of the franchise because the work had not been begun within six months, in consideration of a reduction of the rates by the

owner of the franchise. There was a sufficient con-
sideration moving to the city to support its waiver
of the forfeiture; likewise a sufficient consideration
moving to the grantee of the franchise to support his
agreement to charge patrons within the city, and for
whose benefit and welfare the contract had been en-
tered into, a less rate than was originally agreed
upon. In doing this, the city granted no new or dif-
ferent right in the use of its streets nor did it abate
any of the original consideration. On the contrary,
it gave only what it had originally argeed to grant,
and got in exchange a better consideration. What it
had given up was a right to claim a forfeiture—the
giving up of which is not the granting of a franchise.

The first suit—the one brought by the city—contained
a prayer of alternative relief, it will be remembered.
Section 90, Civ. Code Prac., contains this provision:
''If no defense be made, the plaintiff cannot have
judgment for any relief not specifically demanded.''
It, of course, does not follow that he would be entitled
to any relief prayed for specifically in such case. The
prayer for relief serves a two-fold purpose: (1) It
defines specifically the legal right claimed by the
plaintiff, by which the court will be guided
in granting or refusing the relief; for while
it may not be granted, as not being war-
ranted, supposing the plaintiff has mistaken his
right, the court will not voluntarily grant him
some other relief which the facts might have entitled
him to, but which the plaintiff may not desire, and
the court would not in such case be 'warranted in
thrusting it upon him. (2) The other feature of the
prayer is to apprise the defendant of what is de-
manded of him; for the same facts may authorize any
of several remedies. If the defendant is informed

that only a particular remedy is asked, he may be willing to concede that. Hence he may make no defense. It would be most unjust to allow the plaintiff to subsequently have, or the court to grant, an unclaimed remedy to the defendant's great surprise. But, as more than one remedy may be authorized by the same facts, and as particularly in equity it rests in the sound discretion of the court sometimes as to which of them shall be granted, the plaintiff ought not to be put to the jeopardy of losing his case because he misjudges the temper of the judge. Hence, the Code allows, as the common law did, a prayer for alternative relief. Newman's Pl. & Pr. section 356. In such a prayer the court and defendant are advised of the plaintiff's claim of right, and of the specific redress he asks. The defendant is not taken unaware if he confesses the petition, when the court decides to grant either alternative of the prayer, as he was informed such was specifically demanded. It was not for the plaintiff either to clip the range of the chancellor's discretion in dispensing equity. In this case the chancellor did grant an alternative of the plaintiff's prayer—the one doubtless which appealed to his judicial sense of right upon the admitted facts. We think there was not error in his action.

Appellant contends that as it had bought a franchise—a mere right to occupy certain public streets with its poles and wires—it could not be compelled to use its right (i. e., to occupy the streets); that a court of chancery will not enjoin a man from abandoning his right or incorporeal property. We might grant so much, yet it is a sufficient response, we think, that, notwithstanding, the court will compel him who bought a right to pay for it, although he may choose to abandon it. In this instance the pay, the considera-

tion, is the furnishing of a service, not the personal
services of the contracting party, but the use of his
property and of the time and labors of his employes.
In this case, as part of the consideration for the grant
of the franchise, there is the contract of the grantee
to furnish certain classes of persons certain valuable
privileges.   The contract was made for their benefit,
and based upon a valuable consideration.   They may
sue for the enforcement of the contract made in their
behalf, and one or more may sue for all, or the city
might have maintained the suit, as it was the party
with whom the contract was made.   Section 21, Civ.
Code Prac.   The remedy at law in behalf of the cit-
izens for the breach of the contract by the telephone
company is inadequate.   The appropriate remedy was
an action in equity for its specific performance.   This
view the circuit court took.

In the ordinance granting the franchise in
question there is a preamble setting forth the
extent of the use of the streets contemplated
in the establishment of the telephone plant in
the city, which clause concludes thus: "And are to
set up poles, string wires, and make necessary exca-
vations therefor, and thus connect said central ex-
change, and thereby each subscriber's instrument,
with such other cities and towns, to wit: Paducah,
Mayfield, Fulton and Union City, and to such other
neighboring towns to which this system can be ex-
tended, for the full term of twenty years upon the
following terms and conditions: * * * Fifth. The
rate for use of said telephone shall not exceed $1.50
per month for each telephone, and $1.00 per month for
exchange service for each subscriber."   The language
of the ordinance of March 11, 1895, except as to the
amount, is substantially the same as above.   The

circuit court held that the patrons were entitled to have telephone service furnished them to Paducah, Mayfield, Fulton, and Union City, without any additional charge over $1.50 a month for residence phones, $2.50 a month for phones in business houses, and $3.50 a month where one subscriber uses both.   The parties had never so construed the terms of the ordinance.   Nor is such construction consistent with the common usage or based upon the probabilities.   We think it was the intention of the parties to express by the language quoted that subscribers to the Hickman exchange should have the privilege of using its long-distance connections from the place where their phones were in the city, without having to go to a pay station; but in fixing rates the parties dealt only with the service which was to be completely performed within the city of Hickman.

To the extent indicated, the judgment in the case of Davidson and others was erroneous, and is reversed, and remanded for the entry of a judgment in conformity herewith.   But the judgment in the case of the city of Hickman is affirmed.