# Union Light, Heat & Power Co. v. City of Covington.

(Decided Dec. 13, 1932.)

GALVIN & TRACY and ERNST, CASSATT & COTTLE for appellant.

SAMUEL W. ADAMS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Reversing.

In the case of City of Covington v. Union Light,

Heat & Power Co., 243 Ky. 591, 49 S. W. (2d) 580, it was held that the franchise of the appellee therein to supply the appellant therein and its inhabitants with natural gas had expired January 10, 1932, and that the company had at the time of that decision the right and authority to discontinue such gas service, but would be enjoined from so doing for a period of 60 days in order to give the parties opportunity to negotiate for a new franchise. This time had been by subsequent orders of this court extended until now it expires in the early part of 1933.

On June 9, 1932, there was introduced into the board of commissioners of the city of Covington an ordinance entitled: "An Ordinance providing for the letting of a franchise for a period not to exceed five years, to enter in and upon the streets, ways and public thoroughfares of the City of Covington, and for the purpose of laying and maintaining pipes for the supply of natural gas to the inhabitants of the City of Covington, and prescribing the conditions thereof, and authorizing the City Manager to advertise and receive bids therefor."

This ordinance, in substance, provided that there should be awarded to the highest and best bidder a franchise to enter upon the streets and public ways of the City of Covington, to lay pipes for conveying and supplying natural gas to consumers in the city and elsewhere, "the franchise to be sold and hereby granted" to be on the terms and conditions set out in the ordinance. Then follow the terms and conditions, covering every phase as to character of service to be rendered, how the streets were to be occupied, how installations and extensions were to be made, etc., usually found in these franchise ordinances. The exact time it was to run was not definitely stated, although it was provided that the franchise was not to run longer than a period of five years from August 5, 1932. There was nothing said in the ordinance as to what rates were to be charged for the service. The ordinance directed the city manager to advertise for bids for the franchise therein set out. After due advertisement and after it had lain over for the requisite period of time, this ordinance was duly passed and adopted on June 16, 1932.

The advertisement provided for in the ordinance having been had, bids for the franchise were received

by the city on July 14, 1932. That of the appellant provided that it would pay an upset price of $25 for the franchise, would accept the franchise for a period of three years from August 5, 1932, and would charge for service rates according to the schedule set out in the bid. At a regular meeting of the commissioners of the city of Covington held July 21, 1932, the bid of the appellant was by resolution duly adopted, accepted.

Sections 3235dd-42 and 3235dd-46 of the 1932 Supplement to the 1930 Edition of Carroll's Kentucky Statutes, being part of the act governing the city manager form of government of cities of the second class, Covington being during the times herein mentioned such a class city and having such a form of government, read:

Section 3235dd-42.

"Every ordinance or resolution ordering the construction or reconstruction of any street or sewer, or making or authorizing any contract involving the expenditure of more than one thousand dollars, or granting any franchise of the right to use or occupy the streets, highways, bridges, or public places of the city for any except a merely temporary purpose shall after its introduction and before its adoption remain on file at least one week for public inspection in the completed form in which it shall be put upon its final passage; and no such ordinance or resolution shall go into effect until the expiration of ten days after its passage, except in case of emergency the public health or safety shall require that it take immediate effect, which fact shall be declared by the unanimous vote of the board of commissioners."

Section 3235dd-46.

"If during the ten days next following the passage of any such ordinance as cannot within said ten days become effective a petition signed by a number of voters equal to at least twenty-five per centum (25%) of the total number of votes cast for both candidates for mayor at the last preceding regular election for mayor, stating the residence of each signer, and verified as to signatures and residences by the affidavits of some one or more persons, shall be presented to the board

of commissioners, protesting against the passage of such ordinance, such ordinance shall be suspended from going into effect, and shall be reconsidered by the board of commissioners. If such ordinance be not then repealed, the board shall submit to the voters of the whole city at either special or a regular election according to law, the following question: 'Shall the ordinance (briefly describing it), go into effect?' and if a majority of the votes cast upon such question be in the negative, the ordinance shall not go into effect. But if a majority of the votes cast upon such question be in the affirmative, the ordinance shall go into effect as soon as the result is officially ascertained and declared.''

Acting under the latter of these two sections, voters of the city of Covington to the requisite number filed with the board of commissioners of that municipality on July 28, 1932, a petition protesting against the passage of the resolution of July 24, 1932, accepting the bid of the appellant above mentioned. Thereafter and on August 4, 1932, the board of commissioners adopted a resolution reconsidering the resolution of July 24th and repealing the same.

Thereupon this suit was brought under the Declaratory Judgment Act by the appellant against the appellee seeking to have it declared by the courts that, under the facts above set out, the appellant had a valid and subsisting contract with the appellee to furnish for a period of three years from August 5, 1932, gas service to the city of Covington and its inhabitants under the terms and conditions of the ordinance adopted June 16, 1932, its bid of July 14, 1932, and the resolution of July 24, 1932, accepting said bid, and that the resolution of August 4, 1932, was invalid and of no purpose. The lower court held that the resolution of August 4, 1932, was valid, and that by reason thereof there was no contract existing as appellant claimed. From that judgment, this appeal is prosecuted.

The question turns on whether the ordinance of June 16, 1932, was the ordinance "granting the franchise" within the meaning of that term as used in the sections of the statute above quoted, or was it the resolution of July 24, 1932, that so "granted the franchise." If the former, then, as no petition of protest was filed within the time required or indeed at all, it became

final, and the resolution of July 24, 1932, accepting the bid not being the ordinance "granting the franchise" was not subject to the call for a referendum. On the other hand, if this resolution of July 24, 1932, was the ordinance "granting the franchise" the petition of protest was in time, and the commissioners had the right to repeal it as they attempted to do by the resolution of August 4, 1932.

> Section 164 of the Constitution in part provides: "Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway."

It would seem from the provisions of this section of the Constitution that there could be no grant of a franchise until after it had been defined and created; due advertisement had thereof, and bids received. And such would seem to be the case from the reasoning of the opinion in the case of Louisville Home Telephone Co. v. City of Louisville, 130 Ky. 611, 113 S. W. 855, 861, wherein we said:

> "What, therefore, is commonly termed the 'granting' of a franchise by a city for one of these public utilities is in the nature of a contract by the city with the grantee for the performance of a public service. Such, in part at least, seems to have been the view of this court in the opinion in the case of Cumberland T. & T. Co. v. City of Hickman, decided June 10, 1908 (129 Ky. 220), 111 S. W. 311 (33 Ky. Law Rep. 730), wherein the court, in speaking of a telephone franchise, said: 'This right which is most akin to a right of way, is the subject of grant, which partakes, in turn, of the nature of a contract.' From this view of the subject it will readily be seen that the primary object a city would have, in contracting for or procuring the service of such utilities, is not the revenue to be obtained for the city, but the securing of good and efficient service, and upon such terms as will, in the judgment of the city's governing body, promote the greatest good, not alone to those who use the utility, the telephone for instance, but to the entire community, including the city government."

But we have confronting us the cases of Cumberland T. & T. Co. v. City of Hickman, 129 Ky. 220, 111 S. W. 311, 33 Ky. Law Rep. 730; Eastern Kentucky Home Tel. Co. v. Hatcher, 166 Ky. 176, 179 S. W. 7, and Town of Hodgenville v. Gainesboro Tel. Co., 237 Ky. 419, 35 S. W. (2d) 888, 890.

In the first of these three cases, an ordinance creating and defining fully a franchise for telephone service in the city of Hickman was introduced in the city council on August 16, 1894, and was laid over until September 3, 1894, when it was adopted. In the meantime, advertisement of the proposed franchise had been had, and on September 3, 1894, the bid of the appellant telephone company was received. The bid was duly accepted and the ordinance of August 16th passed. The charters of cities of the fifth class then, as now, forbade the passage of any ordinance "granting a franchise" on the same day it was introduced into the council. Section 3636, Kentucky Statutes. It was held in that case inter alia that the ordinance granting the franchise had been duly passed. It is obvious that the resolution accepting the bid was not deemed to be the ordinance granting the franchise, since it was passed the same day it was introduced, that is, September 3d. It follows that the opinion meant that the ordinance "granting the franchise" within the meaning of that term as used in section 3636 of the Statutes was the ordinance introduced August 16, 1894, defining and creating the franchise.

In the second of the three cases above mentioned, the rule of the City of Hickman Case was applied, and it was held that the ordinance "granting the franchise" had not been duly passed.

In the last of the three cases above mentioned, the rule of the City of Hickman Case was again applied, and it was held that the ordinance "granting the franchise" had been duly passed. In that case, we said:

"The ordinance granting the franchise was enacted at the regular meeting in June, which was a proposition to any bidder that the ordinance should be binding if a satisfactory bid should be made for it and accepted."

It thus appears that the meaning of the phrase "granting a franchise" in the Statutes governing the method of the passage of such ordinances has been held

by this court to be synonymous with "defining" or "creating" a franchise. Whatever may be the soundness of this holding, it has been in effect at least since 1908 when the Hickman Case was decided, and the Legislature has not seen fit to change it. Many franchises have been created and bought on the faith of this construction of the Statutes, and bonds and securities have been issued in connection with such franchises so procured. This being true, we have a case peculiarly calling for the rule of stare decisis, and we should adhere to that construction until it be changed by the Legislature.

What we have said is conclusive of the issue raised in this case, unless, as it is earnestly argued, the omission from the ordinance of June 16, 1932, of any reference to the rates to be charged had the effect of making the ordinance so vague and uncertain as to destroy its effect as an "ordinance granting a franchise." This is not so, however. It is not absolutely essential that the rates to be charged be embodied in an ordinance creating and defining a franchise such as the one here in question, McQuillen, Municipal Corporations (2d Ed.) secs. 1879-1882, although no doubt it is highly desirable that they be. If the voters wished the rates to be set out in the ordinance of June 16th and made a part of it, they should have filed in due time their petition of protest against that ordinance as it was actually written. This they did not do. It follows that, as the "ordinance granting" the franchise within the statutory meaning of that term was the ordinance of June 16th to which no protest was filed and which has become final, the city was after the adoption of the resolution of July 21, 1932, accepting the bid of the appellant, without power to repeal that resolution, and the appellant has the contract and franchise it insists it has.

The judgment of the lower court is therefore reversed, with instructions to enter a judgment in conformity with this opinion.

Whole court sitting.