## Thomas et al. v. City of Horse Cave et al.

(Decided June 13, 1933.)

714

RODES & HARLIN, CHARLES E. WHITTLE, DOWLING & BAIRD, WALTER C. GIBBONS and C. B. LARIMORE for appellants.

WOODWARD, HAMILTON & HOBSON, OLDHAM CLARKE and MOUSER & WILSON for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

The appellants, Dr. H. B. Thomas, Mrs. Carrie Thomas, his wife, Mary Thomas Austin, Ruth Thomas Pohl, and her husband, "Doc" Pohl, own a tract of land in Horse Cave, a city of the fifth class (hereinafter called the city), on which is located the entrance to Hidden River Cave. This cave extends under a large part of the city and appellants take people through it for admission fees. The cave has two main avenues, and a stream of water flows along the winding course of each avenue. A short distance below the confluence of the streams, the appellants maintain a dam, and from the water of this dam appellants pump water for the use of his family and a number of tenants living near the entrance to the cave. For a number of years appellants sold water from this pool to the people of the city, and from 1930 to 1932 he leased this water system and water rights to the Horse Cave Water Company, a corporation which had a franchise until October, 1932, to furnish water to the people of the city.

It is claimed by appellees that no suitable water supply had ever been available to the citizens of the city and the water furnished had always been contaminated and under condemnation by the State Board of Health, and inadequate for fire protection. Because of these conditions, the mayor and city council undertook to

create and sell a franchise for the purpose of maintaining and operating a system of waterworks for the city.

At a regular meeting of the city council on May 25, 1932, an ordinance was introduced to create and sell a 20-year franchise, which ordinance was read and copied into the record book and ordered to lie until the next regular meeting, June 20, 1932. On June 20, 1932, the city council met in regular session, and the minutes of this meeting recite that the purpose of the meeting was to act on an ordinance, 115 N. S., directing the sale of a franchise, and further recites:

"And on motion of J. D. Reynolds, seconded by C. D. Branstetter, said ordinance, 115 N. S., was put upon passage and adopted by unanimous aye vote and ordered spread upon the records as follows: * * *"

The council directed the mayor to advertise the franchise to be sold on the 5th day of July, 1932, to the highest and best bidder. Notice of the sale of the franchise was duly advertised as required by law and same was sold to W. L. McComas on July 5, 1932, which was at a purported regular meeting, and again adopted and copied into the records and recited that W. L. McComas was the purchaser thereof.

On September 6, 1932, at a regular meeting of the council, the purchaser, McComas, filed his written acceptance of the franchise, and the same was noted upon the records of the council.

It is alleged in the petition that pursuant to the franchise contract McComas immediately began the construction of the water system and spent approximately the sum of $30,000 in the construction of a reservoir, filteration plant, pipe lines, etc., and in obtaining leases to drill and in drilling numerous wells in the city; but that he was unable to locate a water supply sufficient for the needs of the people of the city and to give adequate fire protection, unless an examination and survey be made of the appellant's property by exploring the subterranean streams and caves and if permitted to make such inspections and surveys, including an exploration of the streams and cave owned by Dr. Thomas, to which he (Thomas) objected and refused to permit McComas, his agents or employees, to enter his premises or to make said survey. Then the city council

directed and authorized the institution of this suit for the purpose of obtaining an injunction against Dr. Thomas enjoining and restraining him from preventing or interfering with the appellees, plaintiffs below, from entering his said premises for the purpose of locating a supply of water for the purpose of carrying into effect the franchise.

Upon the verified petition, the Hart circuit court entered an order enjoining the appellants from preventing or interfering with appellees entering upon the land and other premises of Dr. Thomas for the purpose of making necessary preliminary examinations and survey for the purpose of locating a source of water for purposes above stated. Appellants, defendants below, applied to Chief Justice Dietzman for an order dissolving the temporary injunction, and on December 13, 1932, Judge Dietzman, then Chief Justice, entered an order dissolving the temporary injunction and directed that proof be taken and the case submitted on its merits.

The issues were made up, proof taken by the respective parties, and upon final hearing before the Hart circuit court, Judge Fulton rendered a judgment adjudging the appellees, plaintiffs below, the relief prayed for in the petition. This appeal results.

Three questions for determination are presented: (1) The validity of the franchise; (2) the right of the city to make a preliminary survey without showing by its records that it intends to condemn and construct a water plant; and (3) the right to restrain the owner of property from interfering with the right of a municipal corporation or a franchise holder to make a preliminary survey to locate water to supply the public need. These topics will be discussed in order.

■ The meetings and proceedings of the city council on May 25 and June 20 are not questioned by appellants. The only objection offered to the validity of the franchise is that the meeting of July 5, 1932, was not a regular meeting of the city council. It is insisted that July 4 was the regular meeting date of the council as fixed by ordinance, and because of it being a holiday, the meeting was postponed to July 5, and the proceedings had on that day were invalid, and for which reason the franchise is void for want of conformity to the Constitution and statutes relating to the granting of a fran-

chise. It is insisted for appellees that because of the regular meeting of the council falling on a holiday (July 4) it could hold its meeting the day following with the same effect as if it had been held the previous day had it not been a holiday. Counsel for the respective parties argue this question at length in their briefs, but for the purpose of determining the validity of the franchise, it is not necessary for us to pass on that question. It is our view that it is immaterial whether or not the proceedings of the council of July 5 were valid or invalid in so far as the validity of the franchise is concerned. On May 25, 1932, the ordinance was introduced and read and laid over to June 20, following, on which date it was reintroduced and read and directed the sale of the franchise and directed the mayor to advertise the franchise to be sold on the 5th day of July, which was done, and McComas, the successful bidder, became the purchaser thereof. On September 6, 1932, at a regular meeting of the council, McComas filed his written acceptance of the franchise.

In the case of Cumberland Tel. & Tel. Co. v. City of Hickman, 129 Ky. 220, 111 S. W. 311, 314, 33 Ky. Law Rep. 730, the initial ordinance was passed on August 16, 1894, in which it was ordered that the city clerk advertise for the public sale of a franchise on September 3, 1894, which was the date of the next regular meeting of the council. The ordinance introduced at the first meeting (August 16) detailed the provisions of the franchise to be granted, and was laid over until September 3 meeting. In the meantime the sale of the franchise was duly advertised and made and the bid reported to the council for action at the September 3 meeting, which was more than five days after the introduction of the initial ordinance. The bid was accepted and approved by the council at the September 3 meeting and the ordinance introduced on August 16 was adopted. The franchise became involved in litigation and, inter alia, the validity of the franchise was brought into question on the ground that the proceedings of the council in granting the franchise were not in conformity with the requirements of section 164 of the Constitution of Kentucky and section 3636 of the Kentucky Statutes.

On an appeal to this court, the franchise was held valid. The court said:

"The Constitution (section 164) indicates that the

city should first advertise for bids, which includes the necessity of setting forth the nature of the proposed franchise, and the terms in which it is to be exercised, then expose the proposed franchise for sale publicly to the highest and best bidder, then, if the bids are acceptable, and one is accepted, grant the franchise to the accepted bidder. The statute amplifying the procedure * * * requires the ordinance or resolution granting the franchise to be accepted only at a regular meeting of the council, after it shall have been introduced and laid over for at least five days. The procedure in the case at bar measures exactly up to these requirements." The case supra is analogous to the case at bar.

The ordinance introduced May 25, 1932, defining the franchise which the city intended to grant, was introduced at a meeting held more than five days before the regular meeting (June 20, 1932) at which it was passed. The initial ordinance, May 25, directed the proposed franchise to be advertised for public competitive sale, which was done. The bid was accepted and the council in regular session adopted the ordinance granting the franchise. These proceedings were all that were necessary in contemplation of the Constitution and statute, supra, and the meeting held on July 5, in so far as the granting of the franchise was concerned, was so much surplusage and unnecessary to perfect the validity of the franchise. To the same effect, Eastern Kentucky Home Tel. Co. v. Hatcher, 166 Ky. 176, 176 S. W. 7; Union Light, Heat & Power Co. v. City of Covington, 246 Ky. 663, 55 S. W. (2d) 667, 669.

It is argued for appellant that the cases of the Cumberland Tel. & Tel. Co. v. City of Hickman, Eastern Kentucky Home Tel. Co. v. Hatcher, and Union Light, etc., Co. v. City of Covington, supra, do not apply to the instant case, because the proceedings of the council evidenced its determination not to grant this franchise until after a sale, and in support of this contention, it quotes from the ordinance adopted June 20, 1932, as follows:

"After the sale and purchase of this franchise and after ratification and confirmation thereof, the city council shall pass an ordinance in due and regular form granting a franchise as defined above to the purchaser thereof * * *."

The language of the ordinance above quoted and the procedure taken by the council apparently warrants the inference that the council may have proceeded upon the theory that as a matter of law the franchise could not be ''granted'' until after it had been sold and a bid accepted therefor. The fallacy of this reasoning is that there could be no sale or purchase of a franchise until one was granted. Cumberland Telephone, etc., v. City of Hickman, supra.

In the Union Light, etc., Co. v. City of Covington, supra, the court said:

''It thus appears that the meaning of the phrase 'granting a franchise' in the Statutes governing the method of the passage of such ordinances has been held by this court to be synonymous with 'defining' or 'creating' a franchise.'' And citing the Hickman Case, supra.

It follows then that as a legal proposition the passage ordinance of June 20, 1932, pursuant to the initial ordinance, May 25, 1932, was the ''granting'' of the franchise. The apparent intention of the council is not controlling herein. The question is whether or not the proceedings had were sufficient to satisfy the provisions of the Constitution and statute pertaining thereto. It is our conclusion that the proceedings had on May 25 and June 20, 1932, followed by a sale of the franchise and acceptance thereof by the bidder, were all that was necessary and that the franchise thus granted and sold to McComas is valid.

■ But it is contended by appellants that in no event is this action maintainable because of the failure of the city of Horse Cave to take the preliminary steps for the preliminary survey in the manner prescribed by section 3653 of the 1930 edition of Carroll's Kentucky Statutes, saying:

''Whenever property is needed for municipal purposes, and an ordinance is enacted so declaring, the proper authorities of the city or town may, if compensation therefor can not be agreed upon, proceed to condemn the same in the manner provided for the condemnation of land for railroad purposes.''

It will be noted that the requisite steps therein required is a condition precedent to the actual filing of condemnation proceeding by the city prior to the actual

filing of a condemnation action by it. And it is doubtful if a preceding enactment of an ordinance is required by that section before a preliminary survey may be made by the city in order to determine the essential element for condemnation, of *necessity,* since the purpose of the preliminary survey is to first determine whether condemnation proceedings may be resorted to. But without determining the question, we have concluded that, since the city in this case is only a nominal party (McComas being the real one), it is unnecessary to determine that question.

The further point is made for appellant that even though McComas be the holder of the valid franchise, he, as an indivdual, is not invested with the power of eminent domain and that such power is granted only to corporations, companies or associations. But this position is untenable. Section 457 of the Kentucky Statutes provides, among other things, that:

"The words 'corporation,' 'company,' may be construed as including any corporation, company, person, persons, partnership, joint stock company or association."

Section 4814d-1 authorizes all corporations or companies organized for the purpose of constructing, maintaining, or operating waterworks for the supply of water to a municipality, to condemn land and material for that purpose. These two sections of the Statutes, supra, when read together, invest an individual franchise holder with the power of condemnation for a public purpose. It is our conclusion that McComas, being the holder of a valid franchise, is invested with the same power of condemnation as a corporation or association, and has the right to acquire, by condemnation proceedings if necessary, such land or other property as may be necessary to carry into effect his franchise contract.

■ Lastly, it is insisted for appellant that appellee has no right or authority to enter upon and explore land with the view of condemnation purposes before the actual institution of such condemnation proceedings. Counsel do not cite us to any authority, nor we know of none, conferring upon an individual holder of a franchise the right of preliminary survey and examination as an incident or right precedent to the institution of condemnation proceedings, but the trend of authorities.

is to the effect that all corporations possessed of the right of eminent domain are invested with the right and authority to enter upon private property for the purpose of making surveys preliminary to the institution of condemnation proceedings for the purpose of acquiring such property as may be necessary in the exercise of its franchise right.

In the case of Ward v. Toledo, N. & C. R. Co., 1 Ohio Dec. (Reprint) 553, the court said:

"The legislature, it is conceded may impart to the railroad company the right of eminent domain upon and over the lands of this state, for the purpose of public improvements. The right of survey and examination is an incident of the right of appropriation, and necessary to its proper exercise. It is not known how a company could very well determine upon the right of appropriating the soil upon which to construct its road, unless it has the prior right of examination for that purpose."

To the same effect is the case of Litchfield v. Bond, 186 N. Y. 66, 78 N. E. 719. In Fox v. Western R. R. Co., 31 Cal. 538, the court said:

"If a railroad is to be constructed, a survey must be made before the corporation can determine the precise land which will be required; and the corporation may lawfully enter for that purpose and may lawfully do what would otherwise be a trespass."

The same rule is adhered to and reiterated in 20 C. J. 680, 51 C. J. 494; Kincaid v. United States (D. C.) 35 F. (2d) 235, 247.

Railroad companies and other holders of special privileges being invested with this right, we conceive of no reason why the same rule should not apply to all corporations, associations, person, or persons invested with the power of eminent domain. The basic question is the right of a holder of a franchise to acquire by condemnation, if necessary, such property as may be necessary for the effective operation of the franchise. Before the institution of condemnation proceedings, it is necessary that the exact location, amount, and description of the property sought to be condemned, be definitely ascertained, and in such circumstances, if these preliminary steps be denied, it would be at least difficult, if not

impossible, to successfully carry out such condemnation proceedings. We do not conceive that the Legislature intended to make a useless gesture by granting a privilege without any power, expressed or implied, to carry such privilege into effect and operation.

In view of the authorities herein cited and what has been said, it follows that the right of entry upon property, in good faith, for the purpose of making a preliminary survey and investigation with the view of condemnation, is a necessary right and incident preliminary of the right precedent to condemnation.

It is further insisted that the survey and entrance of Dr. Thomas' property is not necessary to find or locate a sufficient supply of water for the city. This, however, was a question of fact to be determined from the proof, and the chancellor found this survey and investigation to be necessary. The proof amply sustains the chancellor's conclusions with respect thereto. In view of the well-etsablished rule of this court, that a finding of fact by a trial court will not be interfered with by this court, unless there be no evidence to sustain such finding or that such finding be flagrantly against the weight of evidence, this court will not disturb his finding with respect thereto.

The judgment is affirmed.

Whole court sitting, except Richardson, J.