Walther v. Warner.

WALTHER, Plaintiff in Error, v. WARNER, *et al.*, Defendants in Error.

1. The building of a railroad by a private corporation, under the authority of the legislature, for the accommodation of the public, is a public use for which private property may be lawfully taken.
2. Legislative acts authorizing the taking of private property for public use are unconstitutional unless they provide the owner with a proper remedy to obtain a just compensation.
3. This remedy must be an efficient one; there must be an adequate fund, and an appropriate legal remedy to enforce its application; a judgment against a private corporation is not sufficient.
4. In proceedings instituted by the Pacific Railroad Company to obtain title to land upon which said company had located its railroad, a judgment was rendered against the company for the damages assessed, and an order was made transferring the title to the land to the company; *held*, that actual payment of the damages was essential to the vesting of the title in the company; no entry upon said land prior to such payment for the purpose of constructing the railroad could be justified.
5. It is competent, it seems, for the legislature to authorize entries upon private property without compensation for the purpose of making examinations and surveys preliminary to the location of a railroad.

*Error to Cole Circuit Court.*

*Parsons* and *Morrow*, for plaintiff in error.

I. The court should have sustained the motions to strike out so much of defendants' original answer as justified the entry upon and taking the land by virtue of the " act to incorporate the Pacific Railroad," approved March 12th, 1849; the " act to expedite the construction of the Pacific Railroad and the Hannibal and St. Joseph Railroad," approved February 22d, 1851; the act to amend the act entitled " An act to incorporate the Pacific Railroad," approved March 1st, 1851, and the " act to authorize the formations of railroad associations and to regulate the same," approved February 24th, 1853.  Said answer does not allege that the Pacific Railroad Company performed the conditions required of it by the 9th and 10th sections of the " act to incorporate the Pacific Railroad," approved March 12th, 1849, and by the 14th, 15th, 16th, 17th and 18th sections of the " act to authorize the for-

mation of the railroad associations and to regulate the same," approved February 24th, 1853.

The right of entry and possession under this act exists only after the payment of the damages assessed, which payment is not alleged in the answer. It is manifestly defective under this statute. (See Bloodgood v. Mohawk & Hudson Railroad Company, 18 Wendell, 9.) The 56th section of this act makes the sections above cited applicable to the Pacific Railroad Company.

II. The act of 1849, incorporating the Pacific Railroad Company, does not give the company the power to take private property before making compensation for the same. (See sections 9 and 10.) The construction of these sections, as contended for by the defendants, is unconstitutional. (Constitution of the United States, amendments art. 5; Constitution of Missouri, art. 13, sec. 7.) Just compensation, as meant by the constitution, is a certain and complete reparation in money for the property taken. The payment must not depend on any contingency. The owner of the property can not be compelled to surrender it, and credit a corporation which may be solvent to-day and insolvent tomorrow. It is by no means certain that corporations will pay all their liabilities. A promise from them or any of them is not the certain compensation intended by the constitution. The proper construction of the act is that the compensation for the property taken must be made before or at the time it is taken and appropriated. (See Bloodgood v. Mohawk & Hudson Railroad, 18 Wendell, 9; Blanchard v. Maysville & Lexington Turpike Co. 1 Dana, 86; 25 Wendell, 464; 3 Hill, 567; 2 Kent, 339; 3 Howard, 240; 9 Georgia, 347.)

III. The supplemental answer set up nothing more by way of defence than is contained in the original, except that the Pacific Railroad Company has taken steps to have the plaintiff's damages assessed, and that advantages accrue to him by the construction of the road. The objections to the original apply with equal force to the supplemental answer.

The supposed advantages to the plaintiff resulting from the

alleged traspass could not be pleaded as a defence. (7 Maine, 386 ; 9 Dana, 114 ; 5 Dana, 28 ; 7 Dana, 81.)

IV. The proceedings in the case of the Pacific Railroad Company against the plaintiff were inadmissible as evidence in this case. The award of the commissioners was not warranted by the law, and the judgment of the court upon the award in giving judgment for crossings was not authorized by the law. The act under which said proceedings were had requires compensation for damages to be in money. (See 16th, 17th and 18th sections of the " act to authorize the formation of railroad associations and to regulate the same," approved February 24th, 1853 ; 18 Pickering, 443.)

V. The court should have given the 1st, 2d, 3d, 4th, 5th, 6th and 7th .instructions asked by plaintiff, and should have refused the 2d, 3d and 4th asked by defendant. See authorities cited in the 1st, 2d and 3d points made by plaintiff in error. (Gallaher v. Gates, 20 Mo. 237 ; Cooper County v. Geyer, 19 Mo. 257 ; Baldwin's C. C. 206 ; 9 Ga. 356 ; 26 Wend. 497 ; 3 Kelly, 45.)

*Gardenhire*, for defendant in error.

I. The charter of the company gave them full power to survey, mark, locate and construct a railroad over the land of the plaintiff in error without previously ascertaining and paying or tendering him the damages. (Laws of 1849, 220, 221, secs. 7, 9 and 10.) It gave him a judgment against the company for the amount of damages assessed, and the company an order simultaneously with the judgment, vesting in them the fee simple title of the land. The mode of acquiring title to land by railroad associations, prescribed by the 13th, 14th, 15th, 16th, 17th and 18th sections of the act of February 24th, 1853, to authorize the formation of railroad associations and to regulate the same, (Sess. acts 1853, pp. 128–131 ; R. C. 1855, pp. 414–19,) is not applicable to the Pacific Railroad.

II. The charter of the Pacific Railroad is constitutional, although it vests in the company the fee simple title of the

land upon judgment against them for the damages assessed. (1 Baldw. C. C. 226, 227 ; 3 How. Miss. 250 ; 6 Wend. 634 ; 14 Wend. 51; 12 Mass. 483 ; 7 N. Hamp. 70, 71 ; 25 Verm. 66 ; 31 Maine, 215 ; 35 Maine, 323 ; 1 Foster, 359 ; 9 Conn. 436 ; 2 Kent, Com. 399 ; 20 Johns. 744.) The constitutionality of the general law in regard to roads and highways has never been attacked, and yet it is subject to the same objection as the charter of the Pacific Railroad. (R. C. 1855, p. 1372-3, secs. 21-25.) The authorities denying the constitutionality of the law admit the right of entry for the purpose of locating the road. This gives up the tort; for it may and usually does become necessary in locating the road to destroy the timber and sink shafts on the line of the survey. What is the difference in principle between cutting timber and digging up the soil in *locating* the road, and doing the same thing in constructing it ? *Locating* the road is not *taking* the property ; neither is *constructing* it *taking* it. One, however, is just as permanent a use of the land as the others. Taking can be nothing less than the divestiture of the fee. Neither the location nor construction of the road does this. The fee is still in the land owner with powers to force the vendees of the law specifically to perform the contract made by the law. (1 Amer. R. C. 167, note.)

III. The charter of the company provides a remedy for the land owner to recover damages for the location and construction of the track across his land ; and it is exclusive of the remedy at common law. Lawful authority being given to take the property for public use, the act of taking was justifiable, and no action for a *tort* will lie. (See 1 Amer. *R. C. 166*, note 1 ; 7 Ad. & El. 124 ; 3 Eng. Law & Eq. 59 ; 6 ib. 179.) The land owner may by mandamus compel the company to have his damages assessed and paid. (5 Pick. 323 ; 5 Watts, 152 ; 1 Barb. 34; 4 Barb. 64 ; 31 Maine, 272 ; 1 Ohio State Rep. 77, 105 ; 9 Smede & Marsh. 77, 90 ; 17 Ala. 530 ; 18 Wend. 18.) He may also have an injunction, in a proper case, until they are assessed and paid. (2 Kent, 399, 400, note

*a;* 20 Johns. 744, 745 ; 1 Baldwin's C. C. 226 ; 3. How. Miss. 250 ; 2 Story's Eq. sec. 959, *b.*) These remedies admit the constitutionality of the law and enforce its execution in a constitutional way so as to protect private rights. The action of the plaintiff in error denies it, denies in fact the right of eminent domain, and treats the executors of the law as trespassers.

LEONARD, Judge, delivered the opinion of the court.

The questions in the present case relate to the proper construction of our constitutional provision prohibiting private property from being taken for public use without a just compensation. We have remarked, in an opinion delivered at the present term, (Newby v. Platte co., ante p. 258,) what in deed seems to be unquestionable, that there is in this provision an implied prohibition against·the taking of private property for any purpose other than for public use. And, accordingly, the particular questions to which our attention is now called are whether the use of the plaintiff's property by the company for the construction of their road is a public use within the meaning of the constitution, and if so, whether, under our constitution and the laws applicable to this transaction, it was lawful for the company under the circumstances of the case to enter upon the plaintiff's land for the purpose of constructing their road. The first point has not been contested here, and no matter what doubts in reference to it may have been formerly entertained, we suppose it must be considered as now settled by the course of American decision that the building of a railroad by a private corporation, under the authority of the legislature, 'for the accommodation of the community, is a public use for which private property may be lawfully taken. The other point involves the inquiry, whether the defendant's entry upon the plaintiff's land, in order to construct the road, was authorized by the legislature ; and if it was, whether these legislative provisions are consistent with the constitution. And we may

consider the last question first, as the determination of it against the power of the legislature will supersede the necessity of considering and deciding the other.

The 7th section of the act of March, 1849, to incorporate the Pacific Railroad Company, gives them authority " to survey, mark, locate and construct" a railroad from the city of St. Louis to the city of Jefferson, and thence to some point on the western line of Van Buren county, and to hold a strip of land not exceeding one hundred feet wide, and other sufficient lands for depots, &c., and " to select such route as they may deem most advantageous ;" and the subsequent actions provide a mode by which the company may acquire the land for the road, when they can not agree with the owners, and for this purpose the act directs that the proper court shall, after the assessment of the damages in the manner provided by the act, " render a judgment for them against the company and in favor of the owner, and make an order vesting in the company the fee simple to the land." The general railroad law of February, 1853, after providing for the formation of railroad companies, authorizes them " to lay out their roads not exceeding one hundred feet in width, and to construct the same," and " to purchase, hold and use all such real estate as may be necessary for said roads and the stations and other accommodations necessary to accomplish the object of their incorporation," and " to cause such examinations and surveys for their proposed railroads to be made as may be necessary to the selection of the most advantageous route, and for such purpose, by their officers, agents or servants, to enter upon the land or waters of any person, but subject to responsibility for all damages that shall be done thereby." This act also provides a mode by which all companies, whether formed under that law or incorporated by a special act of the legislature, may, when they can not otherwise obtain it, acquire the necessary land for their roads ; and for this purpose the act directs that " the damages shall be assessed by commissioners to be appointed upon the petition of the company," and that upon the confirmation of the commissioners'

report by the proper court or judge such court or judge shall make an order reciting the substance of the proceeding and directing to whom the money is to be paid, and that a certified copy of this order shall be recorded in the proper clerk's office, and that "thereupon, and on the payment or deposit by the company of the sums to be paid as compensation for the land, the company shall be entitled to enter upon, take possession of and use the said land for the purpose of its incorporation during the continuance of its corporate existence; and all persons made parties to the proceedings shall be divested and barred of all right, estate and interest in such real estate during the corporate existence of the company. It is also provided in this law, that, if the making of this order be delayed more than thirty days from the date of the presenting of the petition for the assessment of damages, "the company shall be entitled to enter on the possession of the land, provided such bonds as the court may require for the payment of the award of the commissioners shall first be filed;" and also, that if "after an attempt to acquire title by appraisal or otherwise, it is found that the title thereby attempted to be acquired is defective," the company may proceed anew to acquire the title, and at any stage of such new proceeding the court "may authorize the corporation, if in possession, to continue in possession, and if not in possession to take possession, and use such real estate during the pendency and until the final conclusion of such new proceeding, and may stay all actions against the company on account thereof on such company paying into court a sufficient sum, or giving security, as the court may direct, to pay the compensation therefor when finally ascertained."

These, it is believed, are all the provisions of law applicable to the case. The facts may be stated in a few words: The suit is for alleged trespasses committed by the defendants in constructing the Pacific Railroad upon the plaintiff's ground before the company had commenced proceedings against the plaintiff to acquire title to it, although afterwards and before the present suit was commenced they did insti-

tute such proceedings, and so conducted them that during
the progress of this suit a judgment was rendered against
the company for the assessed damages, and an order was
made vesting the title to the land in the company. In the
course of the present suit the defendants amended their an-
swer, alleging the institution of these proceedings to acquire
title, and that they were yet pending and being prosecuted
by the company with reasonable diligence to a termination.
The court refused to strike out this amended answer, admit-
ted these proceedings in evidence on the trial, and directed
the jury substantially that if the company had located their
road on the plaintiff's land, and the trespasses complained of
were necessarily committed by the company's contractors in
the construction of the road, the plaintiff could not recover
on account of such acts.

It is thus seen that the practical question in the case is,
whether the legislative acts, to which we have referred, any
or all of them, justify the alleged trespasses, and we are of
opinion that they do not; and that, therefore, the judgment
must be reversed and the cause remanded, and in this we all
concur.

Supposing the provisions of the general railroad law on
this subject to be applicable to all railroad companies, there
is no pretence that the company had any authority, under the
provisions of that law, upon the facts of their case, to enter
on the plaintiff's land for the purpose of constructing the
road.  That act is very cautiously worded for the protection
of private property ; and while it confers authority upon rail-
road companies to enter upon the land of others for the pur-
pose of making the preliminary examinations and surveys, the
power to enter for the purpose of construction is withheld
*until the damages are paid,* except in two classes of cases,
when, owing to the occurrence of events out of the usual
course of things, the companies are allowed to enter for con-
struction temporarily during the pendency of the proceed-
ings for the assessment of the damages, upon depositing in
court a sum sufficient to meet the damages to be assessed,

or upon giving sufficient bonds for the damages. This company, however, have by their original charter, as we have already observed, a general authority " to survey, mark, locate and construct" their road ; and if the view taken at an early time by some judges, that the authority given by the legislature to take private property is valid although no provision be made for ascertaining and paying the owner the required compensation, be correct, the authority here given to construct the road is a sufficient answer to the alleged trespass. This opinion was advanced by Chancellor Kent, in Rodgers against Bradshaw, 20 Johns. 945, when he remarked, that " it would deserve very grave consideration before we undertook to lay down the broad proposition that, notwithstanding a statute clearly and expressly directed the assumption of private property for a necessary public object, it would still be a nullity, and the officer who undertook to execute it a trespasser, if a provision for compensation did not constitute part and parcel of the act itself." It was, however, afterwards seen that if this view of the constitutional provision for the protection of private property against the abuse of the right of eminent domain were to prevail, the provision would be nothing more than a mere moral rule that the legislature might disregard with impunity so far as the legal rights of owners were concerned, and that private property was, in this particular, left in our government where it was in the civilized governments of Europe, under the protection of the moral sense of the legislative department. It was evident too that there was no principle on which any middle course could be taken, such as had been suggested of protecting the party by injunction against the act of the officer ; for if the law were constitutional, the taking of the property was lawful and could not be restrained by the courts ; and if it were unconstitutional, it was void, and the supposed authority that it conferred was a nullity, and no answer to the trespass. And, accordingly, it is now settled by the more modern decisions, that *legislative acts which direct private property to be taken for public use must provide the owner*

*with a proper remedy to obtain compensation, or they will be disregarded by the courts as inconsistent with the constitution.* (Bloodgood v. M. & H. R. R. Company, 18 Wend. 1; City of Pittsburgh v. Scott, 1 Penn. State, 300; Cullender v. Marsh, 1 Pick. 430.)

This being settled, the question then was, whether the payment of the compensation must precede, or at least be concurrent in point of time with the taking of the property; or whether it was sufficient if provision were made in the law for the ultimate payment of it. And, in order to remove all doubt on this point, some of the more recent American constitutions have expressly provided that the payment shall precede the taking. The Mississippi constitution prohibits the taking of private property " without just compensation *first* made ;" and such, too, is the language of the New Jersey constitution of 1844; and in a Mississippi case (Thompson v. Grand Gulf R. R. Company, 3, How. 24)—where the provision to enable the company to acquire the title to land directed the court, after the assessment of the damages, to convey the title to the company, and at the same time to give judgment and execution against them in favor of the owner for these damages—it was decided that this judgment and execution was not compensation within the meaning of the constitution, and that the provision to transfer the title was unconstitutional and void. The provision of the civil code of Louisiana, (Art. 489,) is, that no one can be deprived of his property except " in consideration of a *previous* and equitable indemnity ;" and the civil law of France (Art. 545) is to the same effect, that no one can be compelled to give up his property to the public except " for a just and *previous* indemnity." The language of our own constitution, which it is believed is the language in which this principle is generally expressed in the American constitutions, is that private property can not be taken " without just compensation ;" and it is argued, by those who maintain that an individual ought not to be deprived of his property *without at the same time receiving the equivalent for it,* that our provision,

Walther v. Warner.

although not in the very same words with the provisions we have quoted, is of the very same import, and does not admit of a different meaning even if we limit ourselves to a grammatical interpretation of it ; that the just compensation or indemnity mentioned in all these provisions is the *equivalent* to be paid to the party for the property that is taken from him and not the promise of one ; that the right of eminent domain, as exercised in all civilized nations, is nothing other than a power in the state of compelling individuals to submit in proper cases to a *sale* of their property for its just value, and that the effect of this power, when exerted, is a forced sale at the assessed price ; (1 Domat, book 1, Tit. 2, sec. 13 ;) that the price to be paid is of the essence of a sale, so that the buyer does not become the owner of the thing bought but by the payment of the price, unless the seller agree to accept some other security in lieu of it; and that there is no reason, in ordinary cases not calling for an exception to the general rule, why an individual should be compelled to part with his property to the public on credit; and that to allow this is against the whole spirit and scope of the provision, and a withholding from private property that just protection to which it is fairly entitled. In the earlier days of our state governments, private property, when taken for the public use, was taken mainly by the state, or its political subdivisions, counties, cities, &c., for canals, roads, streets, &c., and the compensation, of course, was paid by these public bodies ; and the laws passed for this purpose usually directed the property to be taken whenever it was needed, and applied at once to the public service, and provided, at the same time, for the immediate assessment and payment of the damages by a warrant drawn by a public officer upon the proper treasury in the usual manner of making public payments. These of course were, to every practical purpose, cash sales, and were held valid by the courts, although the law authorized the taking before the actual payment of the money to the party; and in this manner and to this extent, at least, it became the doctrine of several of

the state courts that the payment of the compensation need not precede or be simultaneous with the taking. (Smith v. Helmer, 7 Barb. 426; Rubottom v. McClure, 5 Blackf. 505; Bloodgood v. M. & H. R. R. Com. 18 Wend. 17.)

The present case, however, does not require us to determine this question even in reference to a private corporation. It is enough here that the law must provide the owner with the means of obtaining compensation; otherwise, it is admitted on all sides to be unconstitutional. These, of course, must be efficient means—*an adequate fund and an appropriate legal remedy to enforce its application;* and we think a judgment against a private corporation, that may or may not be paid, is not sufficient. The great works of internal improvement have more recently been undertaken by private corporations, which of course are allowed to take the land of individuals necessary for their purposes, and are charged with the payment of the compensation; and the laws passed for this purpose have generally followed the old forms observed when the state or its municipal corporations were to pay, directing an order to pay to be made against the company; and, as the provision was deemed sufficient to justify the state and these municipal bodies in taking possession of the property, it is now argued that it ought to be allowed to have the same effect when applied to private corporations; but it is to be observed that there is a moral certainty as to the payment in the one case that does not exist in the other. Private corporations do not possess an inexhaustible fund for the payment of their liabilities such as municipal bodies possess in the persons and things within their jurisdiction subject to taxation, and they of course may fail and prove unable to pay their debts; and this is a sufficient reason why, what has been allowed in favor of the state and its political subdivisions should not be extended to private corporations. We are accordingly of opinion that this company had no lawful authority under their charter to enter upon the plaintiff's land for the purpose of constructing their road until they had acquired the title, and that the passing of the order for

Walther v. Warner.

the payment of the money and the transfer of the title did not vest the title in them without the actual payment of the damages.

We are not to be understood, however, as denying to the legislature the power of authorizing an entry upon private property without compensation for the purpose of making the preliminary examinations and surveys before the location of the road. Similar exertions of the sovereign power of the state for the promotion of the common good are matters of almost daily necessity and occurrence, and although in all of them there is a momentary interference with the rights of the owner, it is acquiesced in without any complaint or indeed any question as to the right. The entry of any officer charged with the execution of criminal process upon the land of a third person for the purpose of making the arrest, and the entry of commissioners to view and mark out a public highway upon the land of another for the purpose of executing the public duty imposed on them, may be mentioned as cases of this character. But in these cases there is no exercise of right of eminent domain, no permanent appropriation of the property to the exclusive use of another within the spirit of this constitutional provision, and they are all subject to this limitation, that they are reasonably necessary to accomplish a lawful purpose, are but temporary in their character, and are accompanied with no unnecessary damage.

But that is not the present case. Here the company took exclusive and permanent possession of the real estate of the plaintiff by constructing their road upon it, and whether the owner was thereby divested of the formal title to his property or not, he was substantially deprived of the use and enjoyment of it ; and this is clearly such a taking as the legislature can not authorize without providing for the owner a just compensation. Our own legislature have recognized this distinction between an entry for the preliminary examinations and an entry for construction in their general railroad law—allowing the former without compensation but subject to responsibility for any real damage that may be occasioned

thereby, and withholding the latter until the title is acquired in the manner prescribed for that purpose.

The doctrine that we now apply to this case seems to be the doctrine in New York as settled by the highest court of that state in Bloodgood's case before referred to, but we are aware that a somewhat different doctrine prevails in some of the New England states. In the state of Maine, the damages are assessed upon the application of the owner at any time within three years after the taking of the property, and an order for their payment is made against the party after the manner of the proceedings when the ground is taken for a common highway ; and in Cushman v. Smith, 34 Maine, 365, it was decided that this provision was sufficient to justify the company in taking possession for the purpose of construction, but that, if they failed to pay the damages within a reasonable time after their assessment, the statute authority would be treated as a nullity from the beginning, and those who entered under it would be chargeable as tresspassers. The struggle with the courts seems to be to reconcile the claims of convenience with the requirements of justice, by allowing the company to take possession of the land as soon as it is selected, without waiting for the assessment of the damages, and at the same time securing to the owner the price of his property, without the payment of which it is felt that he can not be lawfully deprived of it. Our own legislature have reconciled these conflicting claims, wisely enough perhaps, in their general law, by requiring the damages to be paid under ordinary circumstances before the company can enter for the purpose of constructing their road, but at the same time allowing such possession to be taken temporarily, during the pendency of the proceedings to acquire the title— in case these proceedings are delayed beyond a reasonable time—upon a deposit by the company of money or bonds sufficient to meet the damages when assessed. We remark here, in conclusion, that all the cases in all the books seem to assume that an individual can not be *absolutely deprived* of his property without the *actual payment* of the assessed

price, even though a proper provision for its payment be made in the act authorizing the taking of it; and perhaps it would be better to hold that, even in the cases where the proper provision is made for the payment of the price, so that the property is allowed to pass, it passes subject to the condition that the price shall be subsequently paid, so that if for any cause it be not paid the party may repossess himself of it on account of the condition broken.

Other questions have been discussed in this case—some of which are settled by the decision in Newby v. Platte county, made at the present term—but what we have here said disposes of the case, and is all that is required of us at present.

All of us concur in reversing the judgment and remanding the cause, and judgment will be entered accordingly.