STATE of Missouri ex rel. ZOOLOGICAL PARK SUBDISTRICT OF the CITY AND COUNTY OF ST. LOUIS et al., Appellants,

v.

Roy W. JORDAN, Chairman, et al., Respondents,
and
Museum of Science and Natural History Subdistrict of the City and County of St. Louis, Missouri, Intervenor-Respondent.

No. 58568.

Supreme Court of Missouri, Division No. 2.

March 10, 1975.

Motion for Rehearing or to Transfer to Court En Banc Denied April 14, 1975.

Robert S. Allen, Mark T. Keaney, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, for Zoological Park Subdistrict of the City and County of St. Louis et al.

Christian B. Peper, John C. Rasp and Karen Holm, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, for Art Museum Subdistrict of the City and County of St. Louis et al.

Donald U. Beimdiek, Thomas E. Wack, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, for respondents (other than intervenor).

F. William Human, Jr., Robert C. Jones, Ziercher, Hocker, Tzinberg, Human & Michenfelder, Clayton, for intervenor Museum of Science and Natural History Subdistrict of the City and County of St. Louis.

STOCKARD, Commissioner.

This appeal involves the construction of the revenue laws of this state. Therefore, appellate jurisdiction is in this court. The issues require the construction of certain statutes, the background of which will be helpful.

The St. Louis Zoo and St. Louis Art Museum facilities are located in Forest Park within the City of St. Louis. Prior to January 1, 1972, the Zoo and the Art Museum were each operated by a separate board of control, authorized as to the Zoo by what was then § 90.580 et seq., and as to the Art Museum by what was then § 184.020 et seq. Prior to January 1, 1972, the Zoo and Museum were tax supported only by residents of the City of St. Louis.

Sometime prior to January 1, 1972, a plan was developed to include St. Louis County as well as the City of St. Louis into a single taxing district. As the result the statutes above referred to were repealed, and the legislature enacted a new law, §§ 184.350–184.388, Laws 1969, 3rd Ex.Sess. p. 95. This law became effective September 11, 1970, and it contained an enabling act whereby the Zoo, the Art Museum and a third institution, the Museum of Science and Natural History, or any of them, could become subdistricts in a new district if established by a favorable vote of the people in both St. Louis City and St. Louis County.

An election was held on April 6, 1971, and as provided in the new Act the issue submitted was as follows:

Shall there be established a Metropolitan Zoological Park and Museum District comprising the City of St. Louis and the County of St. Louis which dis-

trict shall consist of all of any one of the following subdistricts:

| | |
|---|---|
| a. Zoological Subdistrict with a tax rate not in excess of four cents on each $100 of assessed valuation of all taxable property within the district. | FOR [ ]  AGAINST [ ] |
| b. Art Museum Subdistrict with a tax rate not in excess of four cents on each $100 of assessed valuation of taxable property within the district. | FOR [ ]  AGAINST [ ] |
| c. Museum of Science and Natural History Subdistrict with a tax rate not in excess of one cent on each $100 of assessed valuation of taxable property within the district. | FOR [ ]  AGAINST [ ] |

The result was that the Metropolitan District was established as to all three subdistricts, that is, the Zoo, the Art Museum, and the Museum of Science and Natural History.

In par. 3 of § 184.350 it is provided as follows:

In the event that a majority of the voters voting on such propositions in such city and the majority of voters voting on such propositions in such county at said election cast votes 'For' one or more of the said propositions, then the district shall be deemed established and the tax rate, as established by the board, for such subdistrict shall be deemed in full force and effect as of the first day of the year following the year of said election.

The controversy leading up to this case arose when the District Board, defined by § 184.352, as "the governing body of the metropolitan zoological park and museum district," sent to each of the three subdistricts a memorandum dated April 18, 1972, in which it advised the subdistricts that it intended to hold hearings in May of that year to set their respective tax rates, but only for the year 1972. The Zoo and the Art Museum objected on the basis, as stated in their brief, that "the authority of the Board was to 'establish' the rate which would be 'in full force and effect' as of January 1, 1972; that this statutory direction required the Board to determine the

tax rate once, and not just for 1972, and that the rate as established would remain in full force and effect until changed by the legislature or by the people."

The District Board proceeded with its scheduled hearing, and thereafter adopted a resolution fixing the rate of tax for the three subdistricts for the year 1972, as follows:

| | |
|---|---|
| The Zoological Park | 4¢ for each $100 assessed valuation. |
| The Art Museum | 4¢ for each $100 assessed valuation. |
| The Museum of Science and Natural History | ½¢ for each $100 assessed valuation. |

Following the above action by the District Board, on August 7, 1972, the Zoological Park Subdistrict and the Art Museum Subdistrict filed a suit in two counts by which in Count I they sought a writ of mandamus to compel the District Board to establish a permanent tax rate for each of the subdistricts, and by Count II sought a declaratory judgment that the District Board had no authority to alter such tax rates.

Subsequently the District Board adopted a set of regulations. Appellants amended their petition to include a third count in which they challenged the authority of the District Board to promulgate and apply these regulations to the subdistricts.

The Museum of Science and Natural History Subdistrict has intervened by consent of all parties. On this appeal it contends only that "There is an ambiguity in the sections of the enabling legislation relative to appellants, respondents and intervenor and it is necessary to determine the rights of the parties thereunder."

As to Count I, the trial court ruled that the District Board "had the authority to establish the tax rate applicable to each subdistrict for the year 1972, and thereafter [the District Board has] the authority to establish the same or different tax rate, within the statutory limits . . . for each year subsequent to 1972." The court

also ruled in favor of the District Board on Counts II and III.

▮ The basic rule of construction of a statute is to seek the intention of the legislature, Julian v. The Mayor, Councilmen and Citizens of the City of Liberty, 391 S. W.2d 864 (Mo.1965), which when possible shall be ascertained from the words used by giving them their usual, plain and ordinary meaning so as to promote the object and manifest purpose of the statute. State ex rel. State Highway Commission v. Wiggins, 454 S.W.2d 899 (Mo. banc 1970). But when the words of a statute are ambiguous, as here, it is proper to consider the history of the legislation, the surrounding circumstances, and the ends to be accomplished. Protection Mutual Insurance Company v. Kansas City, 504 S.W.2d 127 (Mo.1974). See also the Annotation at 70 A.L.R. 5, pertaining to the right to resort to various aids in the construction of ambiguous phrases in statutes.

Prior to the enactment of the present legislation the tax with which to maintain and operate the Zoo was a fixed rate. See § 90.580 and Senate Bill 7, Laws of Missouri 1967, 1st Ex.Sess. p. 879. As to the Museum it was a fixed rate but changeable by a majority vote of the voters without the necessity of new legislation. See former § 184.020, subd. 4.

When House Bill No. 23 (which, after amendments became the statutes now under consideration) was first introduced it provided that the voters, after the requirements for submission of the issues were met, should vote for or against the establishment of a Metropolitan Zoological Park and Museum District, consisting of optional subdistricts. The tax was fixed at "four cents on each $100 of assessed valuation" as to the Zoological Subdistrict and as to the Art Museum Subdistrict, and at "one cent on each $100 of assessed valuation" for the Museum of Science and Natural History. There was no provision for the voters to change those rates. While pending in the House the bill was amended to provide, as to the Zoo and the Museum,

for a "tax rate *not in excess* of four cents on each $100 of assessed valuation," and for a "tax rate *not in excess* of one cent on each $100 of assessed valuation" for the Museum of Science and Natural History. The same amendment further provided for the insertion of words so it provided that if a majority of the voters approved one or more of such propositions, "then the district shall be deemed established and the tax rate, *as established by the Board,* for such subdistrict shall be deemed in full force and effect as of the first day of the year following the year of said election." The above words that are italicized were the words added by the amendment.

▮ It is clear that by not including a provision that the rate could be changed by the electorate and a procedure for doing so, and by including the provisions as shown by the above amendment, the legislature intended the District Board to be empowered to determine the rate of tax for each subdistrict according to its needs, but within the statutory limits, and to vary that tax rate when appropriate.

▮ Also, a statute should not be construed to lead to an absurd result. The District Board set the rate for the Museum of Science and Natural History at one-half the authorized maximum. Appellants' contention would result in that rate being permanently fixed regardless of future expansion or development, although the electorate authorized the imposition of a higher rate if needed. If the Board had set the rate for the Zoo and the Museum at two cents for each $100 assessed valuation instead of the maximum permitted, one can only speculate as to what would then have been appellants' position as to its permanency.

Only an unreasonable result can follow appellants' contention. The fact that the tax rate established for the Zoo and the Museum Subdistricts was the maximum authorized is not the answer. It could have been set at a lower rate, and was set at less than the maximum rate for one subdistrict. If the rate was to be perma-

nent and was higher than needed, the public would suffer. If the rate was too low, the subdistrict and its worthy project would suffer, and no correcting change could be made. When reasonably construed the language of the statute and its legislative history clearly indicates an intention on the part of the legislature that the District Board is empowered to vary the tax rate for each subdistrict within the statutory limits according to changing conditions and needs, and we so hold.

■ Appellants' second contention is that the trial court erred in overruling their objections to an exhibit which was a "synopsis" prepared by a member of the legislature expressing his views as to the meaning of the language of the statute. We need not rule this contention. This case was tried before the court, and in making our *de novo* review this court does not consider any inadmissible evidence. Whether or not the admission of this exhibit was error, we have given no consideration to it in arriving at our conclusion.

■ Appellants' third and last point is that the trial court erred in ruling valid what is entitled the "Metropolitan Zoological Park and Museum District Regulations Relating to Financial Operations of the Metropolitan District for Accounts of the Subdistricts Based on R.S.Mo. Sections 184.350, 184.354, 184.356 and 184.382." Appellants assert this ruling was erroneous, "except for Sections VI and IX . . . [because] said Regulations are beyond and in excess of the authority granted to the District Board."

The point in the brief is inadequate. It does not set forth "wherein and why [the ruling of the trial court is] claimed to be erroneous," except for the conclusionary statement that the regulations are in excess of the authority of the District Board. Rule 84.04(d), V.A.M.R. In addition, the regulations consist of nine sections. In the point appellants disclaim any challenge to Sections VI and IX, and in the argument portion of their brief they make no mention of Sections III and V.

■ Section 184.354 of the present law grants to the District Board authority to make rules, regulations, and bylaws "to effectuate its purposes." In view "of the broad authority granted," and the adoption of the regulations pursuant thereto, "The burden rests upon appellants to . . . show the invalidity" of the regulations. "Only in a clear case will the courts interfere on the ground of unreasonableness." King v. Priest, 357 Mo. 68, 206 S.W.2d 547 (1947). The regulations in this case "are to be sustained unless unreasonable and plainly inconsistent with the act, and they are not to be overruled except for weighty reasons." Foremost-McKesson, Inc. v. Davis, 488 S.W.2d 193 (Mo. banc 1972).

■ Sections I and II of the regulations pertain to the preparation and submission of annual budgets by the respective subdistricts. Appellants argue that § 184.362 expressly grants to the subdistricts "exclusive control of the expenditures of all moneys collected by the district," and "there is nothing in the statute about budgets." But they admit that they are otherwise required by law, § 67.010 RSMo 1969, V.A.M.S., to prepare a budget. We have ruled that the District Board is empowered to "establish" the tax rate for each year, and appellants have not demonstrated that the regulations pertaining to budgets are without authority, or are unreasonable, or perform no purpose in the performance of its duties by the District Board.

Sections IV and VIII pertain to vouchers. § 184.356 provides that the District Board shall keep separate and apart all the funds collected for a subdistrict, and the funds "shall be drawn upon by the proper officers of the subdistrict upon submission of properly authenticated vouchers." The District Board unquestionably has the right to establish reasonable criteria in order to determine that the funds are being used for a legitimate subdistrict purpose. This does not interfere with the subdistricts exclusive discretion to use the funds for any legitimate purpose. In re Mansour's Estate, 238 Mo.App. 623, 185 S.W.2d 360 (1968). Appellants totally fail in establish-

**374**

ing these regulations to be without authority or are so unreasonable to be invalid.

Section VIII pertains to the investment by the District Board of "Funds in Excess of Current Requirements." Appellants' only challenge is that the "District Board purports to grant to itself the authority to invest the funds of the subdistricts in 'marketable securities'" and that "as the collecting agent it has no authority to invest this money." The regulation provides that "Investments will be made in such name and in such securities as is authorized by law for political subdivisions of the State of Missouri, and for such terms as may be appropriate to ensure the availability of the funds as required by the Subdistricts." We find no merit to appellants' challenge to this regulation.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the judges concur.