**STATE ex rel. Florence RHODES, et al., Relators-Respondents,**

v.

**Honorable Clifford CROUCH, Judge, Circuit Court, Christian County, Respondent-Appellant.**

**No. 62720.**

Supreme Court of Missouri, En Banc.

Sept. 9, 1981.

Anthony McConnell, Ozark, Jack L. Ronchach, Vinata, Okl., for respondent-appellant.

George M. Johnson, Springfield, for relators-respondents.

**PROHIBITION**

HIGGINS, Judge.

Respondent judge issued an injunction which permitted KAMO Electric Cooperative to survey relators' land in furtherance of condemnation. The Court of Appeals, Southern District, issued a writ of prohibition which vacated the injunction. This Court transferred the case because of the general interest of the question whether a rural electric cooperative has the power to

enter private property for the purpose of making a survey in anticipation of and preparation for condemnation of a right-of-way for an electric transmission line. Writ quashed.

KAMO Electric Cooperative is engaged in the transmission of electricity for the purpose of serving rural areas. In furtherance of its purposes, KAMO has proposed and is prepared to construct a transmission line that would extend through part of Christian County, including property owned by relators.

Relators refused KAMO access to their property for the purpose of surveying the exact right-of-way for the transmission line. KAMO petitioned the Circuit Court of Christian County for an injunction that would grant access for surveying on the property of relators. The court issued a restraining order for that purpose and KAMO posted a $1,000 cash bond. After hearing, the court issued a temporary injunction, and the relators petitioned the court of appeals for a preliminary writ of prohibition. The writ was made absolute to dissolve the restraining order and temporary injunction.

The pre-condemnation right of a rural electric cooperative to enter upon and survey land is a question of first impression in Missouri.[1]

KAMO is a rural electric cooperative as defined in Chapter 394, RSMo 1978. Section 394.080(11) grants rural electric cooperatives the power of eminent domain "in the manner provided ... [to] corporations constructing or operating electric transmissions and distribution lines or systems." Section 523.010 grants such corporations the power of eminent domain. "While eminent domain statutes are to be strictly construed so far as the power to condemn is concerned, yet they are not to be construed so as to defeat the evident purpose of the Legislature." *State ex rel. Siegel v. Grimm,* 314 Mo. 242, 253, 284 S.W. 490, 493 (banc 1926).

Rule 86.04 provides that a petition for condemnation "shall provide a description" of the property or right sought. This Court held in *State ex rel. Morton v. Allison,* 365 S.W.2d 563, 565 (Mo.1963):

[T]he statute and rule contemplate that the condemnor shall describe the land and rights sought with such particularity that the owner can, without too much difficulty *ascertain exactly what is being taken* .... [It] is not asking too much to say that the owner's lands should be described by metes and bounds, referenced by Congressional Section Courses, recorded plats, or fixed and readily ascertainable monuments.

Accordingly, pre-condemnation surveying is not only necessary to the exercise of the right of eminent domain, it is a part of eminent domain. The right of eminent domain is virtually useless to an entity without the right to survey, and that right must be available before the beginning of condemnation proceedings. As stated in *Thomas v. City of Horse Cave,* 249 Ky. 713, 61 S.W.2d 601, 604 (1933):

[I]t is necessary that the exact location, amount, and description of the property sought to be condemned, be definitely ascertained, and in such circumstances, if these preliminary steps be denied, it would be at least difficult, if not impossible, to successfully carry out condemnation proceedings. We do not conceive that the Legislature intended to make a useless gesture by granting a privilege without any power, expressed or implied, to carry such privilege into effect and operation.

The foregoing refutes respondent's contention that because the legislature has specified a right of pre-condemnation survey to some entities, and not to rural electric cooperatives, this Court should hold that the legislature did not intend for rural electric cooperatives to have the power of survey in anticipation of and preparation for condemnation. The existence of the referenced grants[2] does not preclude a

---

1. *See* Annot., 29 A.L.R.3d 1104 (1970), for cases concerning this topic.

2. The legislature has provided a right of pre-condemnation survey to railroad corporations

determination that eminent domain includes the right to survey in anticipation of and preparation for condemnation. The purpose of statutory construction is to determine the intent of the legislature. *State ex rel. Schwab v. Riley*, 417 S.W.2d 1 (Mo. banc 1967). In arriving at that intention, the objectives of the act are to be considered, and the construction must be reasonable and logical and give meaning to the statutes. *In re Duren*, 355 Mo. 1222, 1235, 200 S.W.2d 343, 352 (Mo. banc 1947), *Globe-Democrat Publishing Co. v. Industrial Commission*, 301 S.W.2d 846, 852 (Mo.App.1957). In this context, it would make little sense that the legislature would grant the power of eminent domain to an entity and at the same time deny the entity the means required to use the grant.

The writ of prohibition issued by the Court of Appeals, Southern District, is quashed; the temporary injunction issued by the Circuit Court of Christian County is ordered reinstated.

DONNELLY, C.J., and WELLIVER, MORGAN and BARDGETT, JJ., concur.

SEILER, J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of SEILER, J.

SEILER, Judge, dissenting.

If rural electric cooperatives desire that a landowner's rights be subject to their opening his land to their survey teams whenever the utility sees fit, sans leave from anyone, the utility should obtain this right from the general assembly, by express provision, as has been done by the highway commission, the railroads and the water companies. This court has no mandate to give rural electric utilities a license to enter upon people's land.

I agree with the view of the court of appeals, southern district, that under the Missouri authorities and the applicable principles of statutory construction, it must be

concluded that thus far the legislature has not expressly or impliedly granted the power in question to a rural electric cooperative. I, therefore, respectfully dissent for the reasons stated below, many of which I have taken from the opinion adopted in that court written by Maus, J., but without using quotation marks. Judge Maus reasoned as follows: This matter of a public utility entering upon a man's property to make a survey is akin to the power of eminent domain and is vested in the state. As he points out, this proposition and the authority of the *legislature* to delegate the power to enter for purposes of a survey was recognized in *Walther v. Warner*, 25 Mo. 277, 289 (1857), in which the court stated that it did not wish to be "understood . . . as denying to the legislature the power of authorizing an entry upon private property without compensation for the purpose of making the preliminary examinations and surveys before the location of the road". Such a survey power, however, is not inherent in the corporate existence of KAMO. The power is vested in KAMO only if it has been expressly or impliedly granted to it by the statutes of this state.

In considering this issue, it is necessary to keep in mind that by its position KAMO seeks to establish a power to enter private property in the absence of a court order and without judicial supervision. It argues that such a power is necessary to the exercise of the right of eminent domain. While this power could make the exercise of that right more convenient, its absence does not make the exercise of that right impossible. It simply is not correct to argue that without the right to pre-condemnation survey, the rural electric utility is hamstrung. By making use of what can be seen and measured from transits set up in the public streets, highways, roads, alleys and walks, or by resorting to the air space, aerial photography, already established markers and monuments, government surveys, charts and maps, as well as recorded plats and ab-

"as may be necessary to the selection of the most advantageous route," § 388.210, RSMo 1978; and to the State Highway Commission to

"determine the most advantageous route," § 227.120, RSMo 1978.

stracts of title, the civil engineers, surveyors, and mathematicians available to any rural electric utility can readily plot and describe with great accuracy the location and boundary of the land sought to be acquired, all without invading the owner's property prior to condemnation.[1] Knowledge that rural electric utilities can get along nicely without the right to pre-condemnation entry may be one reason among many why the general assembly has not given them such a right.

After an action in condemnation has been commenced, if there is doubt about the description, a survey may be had under the supervision of the court as authorized by Rule 58.01. Rule 86 in requiring that the petition "shall contain a description of the property or right which plaintiff desires to acquire, use or extinguish" does not mean that only a description based on a survey will satisfy the rule or that a description cannot be amended. Otherwise, the court in *State ex rel. Morton v. Allison,* 365 S.W.2d 563 (Mo. banc 1963), cited in the principal opinion, would not have discussed the extent to which a condemnation petition can be amended. The court declared that it was in agreement with the court of appeals that "generally, amendments should be liberally allowed" and pointed out instances where errors in description or change in plan may be taken care of by amendment. *State ex rel. Morton v. Allison, supra,* at 565.

This court cannot decide this case upon the basis of whether it believes it is desirable that the power in question be vested in KAMO. "Provisions not plainly written in the law, or necessarily implied from what is written, should not be added by a court under the guise of construction to accomplish an end that the court deems benefi-

cial." *Wilson v. McNeal,* 575 S.W.2d 802, 809 (Mo.App.1978). It must be decided upon the basis of whether it was the intention of the legislature to grant that power to KAMO. *State ex rel. Zoological Park Subdistrict v. Jordan,* 521 S.W.2d 369, 372 (Mo.1975).

That intention is ascertained by the application of familiar principles of statutory construction. While such an entry may not be a "taking" in the constitutional sense, it is nevertheless an invasion of the right of private property. For this reason, the principles applicable to the construction of a grant of the right of eminent domain are applicable to the problem of construction present in this case. One of those principles is:

"There is no rule more familiar or better settled than this: that the grants of corporate power, being in derogation of common right, are to be strictly construed; and this is especially the case where the power claimed is a delegation of the right of eminent domain, one of the highest powers of sovereignty pertaining to the state itself, and interfering most seriously, and often vexatiously, with the ordinary rights of property."

*Chicago, M. & St.P.R.Co. v. Randolph Town-Site Co.,* 103 Mo. 451, 462, 15 S.W. 437, 439 (1891) (quoting Cooley, Const. Lim. 656). *See also State ex rel. Schwab v. Riley,* 417 S.W.2d 1 (Mo. banc 1967); *Southwestern Bell Telephone Co. v. Newingham,* 386 S.W.2d 663 (Mo.App.1965).

The grant of such a power is also clearly in derogation of the common law. That fact mandates the consideration of the well established principle of construction that '[s]tatutes are generally subject to a strict construction where they interfere with pri-

---

1. The United States Department of Agriculture has made aerial photographs of every county in Missouri. The general public, including utility companies, can purchase these photographs and enlargements thereof through either the state or local Agricultural Stabilization and Conservation Service offices. By applying standardized surveying techniques to these scale photographs, a utility company can obtain accurate land descriptions and measure- ments. The Department of Agriculture has lists of available aerial photographs. *See, e. g.,* U.S. Dep't of Agriculture, Aerial Photography Status Maps, ASCS (1981); U.S. Dep't of Agriculture, Aerial Photography Status Maps, SCS (1980); U.S. Dep't of Agriculture, Comprehensive Listing of Aerial Photography, ASCS (1975); U.S. General Services Administration, Aerial Photographs in the National Archives (1973).

vate property rights or are in derogation of rights of individual ownership." 73 Am. Jur.2d *Statutes* § 285, at 447–448 (1974). *See also Southwestern Bell Telephone Co. v. Newingham, supra,* 386 S.W.2d at 665.

When Chapter 523, RSMo 1978, in particular § 523.010, is considered in relation to the other statutes providing for the right of eminent domain, the absence from that chapter of a provision expressly granting the power in question to the condemnor bears a special significance. By § 393.020, that power is expressly granted to companies installing underground water mains. By § 388.210, it has been granted to railroads and by § 227.120(13), it has been granted to the state highway commission. When the general assembly has intended to grant the power in question, it has done so in terms, and not by implication.

While the principal opinion states that pre-condemnation surveying is a part of eminent domain and that eminent domain is virtually useless without it, this has not been true of rural electric cooperatives, which until this date, have never had such a right. We are undertaking to do for rural electric cooperatives what the legislature has done for railroads, the state highway commission and those installing underground water mains. The trouble with this is that we are not elected to enact statutes.

Additionally, I do not believe that the case cited in the principal opinion, *State ex rel. Morton v. Allison, supra,* is authority for the proposition that KAMO has any right to enter upon relator's premises to make a survey without permission of relators. The *Allison* case deals with condemnation by the state highway commission and, as pointed out by Judge Maus in his opinion, the highway commission, by statute, is expressly given the right to enter and make a pre-condemnation survey.

Finally, it is settled law that the condemnation petition must contain the allegation that no agreement could be reached with the owner on the price to be paid for the land to be acquired. If the condemnor knows enough about what it is after to be able to state truthfully that it and the

owner cannot agree on the price, then it necessarily has sufficient information to be able to prepare and file its petition, without the additional right of invading the owner's property in advance with a survey team.

I would make the preliminary writ in prohibition absolute.