Ralph W. POGUE and Ruth Pogue, Plaintiffs–Appellants,

v.

ASSOCIATED ELECTRIC COOPERATIVE, INC., Kamo Electric Cooperative, Inc., Allgeier Martin and Associates, Inc. Defendants–Respondents.

No. 15552.

Missouri Court of Appeals, Southern District, Division Two.

Nov. 7, 1988.

**170**

David C. Ruyle, Ruyle and Sims, Neosho, for plaintiffs-appellants.

George M. Johnson, Stockard, Andereck, Hauck, Sharp & Evans, Springfield, Jot Hartley, Rorschach, Pitcher, Castor & Hartley, Vinita, Okl., Abe R. Paul, Rhoades, Paul & Paul, Pineville, Ronald G. Sparlin, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for defendants-respondents.

FLANIGAN, Presiding Judge.

Plaintiffs Ralph Pogue and Ruth Pogue, husband and wife, filed this action in the Circuit Court of McDonald County against defendants Associated Electric Cooperative, Inc. ("Associated"), KAMO Electric Cooperative, Inc. ("KAMO"), and Allgeier Martin and Associates, Inc. ("Allgeier"). In January 1987, on change of venue, the case was transferred to the Circuit Court of Barton County.

In November 1987 plaintiffs filed their third amended petition ("the petition"). Each defendant filed a motion to dismiss on the ground that the petition failed to state a claim upon which relief can be granted. On December 14, 1987, the court sustained the motion to dismiss filed by each defendant and dismissed the petition with prejudice. Plaintiffs appeal.

The petition is in two counts. It is unnecessary to examine Count II for it incorporated the contents of Count I and made additional allegations. For the reasons which follow, this court holds that Count I stated a claim for relief and that the trial court erred in entering its order of dismissal.

In addition to allegations concerning the residence and legal capacity of the parties, Count I pleaded, in essence, the following:

1. ...

2. At all times herein mentioned plaintiffs were the owners of the following described real estate in McDonald County: [The description included all of the SW ¼ of the SW ¼, Section 29, Township 22 North, Range 32 West; and portions of the NW ¼ of the SW ¼ of said Section 29.]

3. At all times herein mentioned Allgeier, KAMO and their employees and representatives were the agents, servants and employees of Associated, acting within the scope and course of their respective employment by Associated, and therefore, the defendants are all joint trespassers. Or, alternatively, Allgeier's acts, as set out in paragraph 6 below, were unauthorized and, therefore, Allgeier was the sole trespasser.

4. On or before April 30, 1986, one Wilson, an employee of KAMO, contacted plaintiff Ralph Pogue and requested permission and license to go upon plaintiffs' land for purposes of conducting a preliminary centerline survey. Plaintiff Ralph Pogue gave Wilson permission and license to conduct a preliminary centerline survey but stated to Wilson as a condition of such permission and license that no trees were to be cut during such survey.

5. On or about May 1, 1986, Allgeier, after conferring with Wilson and other representatives of KAMO, entered upon the aforesaid real estate *"for purposes of conducting a survey and intentionally and without just cause or excuse cut numerous trees* belonging to plaintiffs in violation of plaintiff Ralph Pogue's expressed instructions and license to Wilson."

6. Allgeier's act of cutting numerous trees, as aforesaid, was authorized by KAMO and Associated, "or alternatively, [Allgeier's] act of cutting numerous trees, as aforesaid, was unauthorized and, therefore, [Allgeier] was the sole trespasser."

7. As a result of defendants' "joint trespass, or alternatively [Allgeier's] trespass," on plaintiffs' real estate, plaintiffs have suffered damages of $5,000.

8. Defendants' trespass or, alternatively, Allgeier's trespass, "was done willfully and without just cause or excuse, entitling plaintiffs to punitive damages in the sum of $1,500,000."

The prayer of Count I requested $5,000 in actual damages and $1,500,000 in puni-

tive damages against the defendants, jointly and severally, together with other relief.

Where a petition is attacked by a motion to dismiss for failure to state a claim, the mere conclusions of the pleader are not admitted. The facts alleged, however, are taken to be true and the pleader is entitled to all favorable inferences fairly deducible therefrom. *Ray v. Dunn*, 753 S.W.2d 652, 654[1, 2] (Mo.App.1988). If such facts and such inferences, viewed most favorably from plaintiff's standpoint, show any ground for relief, the petition should not be dismissed. A petition is not to be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id.

The motion to dismiss filed by Associated contained certain statements, including the following: Associated has the power of eminent domain under § 394.080[1] and was in the process of doing that which was necessary, preliminary to filing condemnation proceedings, in order to acquire rights-of-way on which to construct, operate, and maintain electric transmission lines for the benefit of rural customers; under the authority of State ex rel. *Rhodes v. Crouch*, 621 S.W.2d 47 (Mo. banc 1981), prospective condemnors "are given the right of pre-condemnation entries for purposes of enabling surveys of land so that condemnation procedures can be met and complied with; Associated and Allgeier and others on its behalf were engaged in the process of this pre-condemnation survey procedure and were upon plaintiff's (sic) land for that purpose"; two actions in the Circuit Court of McDonald County (Case No. CV 186–123CC and Case No. CV 187–133CC) are "presently pending between the parties hereto involving the same issues and the same basic subject matter"; in Case No. CV 187–133CC Associated filed "an ongoing condemnation petition"; "whatever damages the plaintiffs may have should be recovered in the ongoing condemnation proceeding"; "all of the damages alleged by the plaintiffs occurred on the property being condemned."

KAMO "adopted on its own behalf" the motion to dismiss filed by Associated. Allgeier's motion to dismiss contained statements substantially similar to those in Associated's motion. None of the three motions to dismiss was verified or accompanied by affidavit. At the hearing on the motions, none of the parties introduced any evidence.

■ A motion is not self-proving and the burden is on the movant to prove its allegations. *Taylor v. Coe*, 675 S.W.2d 148, 150[3] (Mo.App.1984); *Staab v. Thoreson*, 579 S.W.2d 414[2] (Mo.App.1979). The trial court was without authority to take judicial notice of the records of the Circuit Court of McDonald County. *State v. Moreland*, 351 S.W.2d 33, 37[6] (Mo.1961); *Williams v. Williams*, 497 S.W.2d 415, 417[6] (Mo.App. 1973).

In *Rhodes*, supra, the supreme court held that a rural electric cooperative had a "pre-condemnation right" to enter upon and survey land. The court said, at p. 48:

"[P]re-condemnation surveying is not only necessary to the exercise of the right of eminent domain, it is a part of eminent domain. The right of eminent domain is virtually useless to an entity without the right to survey, and that right must be available before the beginning of condemnation proceedings."

The court also said, at pp. 48–49: "The legislature has provided a right of pre-condemnation survey to railroad corporations 'as may be necessary to the selection of the most advantageous route,' § 388.210 ...; and to the State Highway Commission to 'determine the most advantageous route.' § 227.120 ...." The court said the existence of those two express statutory grants of a right of pre-condemnation survey and the absence of a similar grant to rural electric cooperatives did not preclude a determination that the cooperatives had such a right to survey under their power of eminent domain.

---

**1.** All references to statutes are to RMSo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Long ago, in a case involving a railroad acting pursuant to what is now § 227.120(1), our Supreme Court said:

> "We are not to be understood, however, as denying to the Legislature the power of authorizing an entry upon private property, without compensation, for the purpose of making the preliminary examinations and surveys before the location of the road. Similar exertions of the sovereign power of the state for the promotion of the common good are matters of almost daily necessity and occurrence, and, although in all of them there is a momentary interference with the rights of the owner, it is acquiesced in without any complaint, or, indeed, any question as to the right. The entry of any officer charged with the execution of criminal process upon the land of a third person, for the purpose of making the arrest, and the entry of commissioners to view and mark out a public highway upon the land of another, for the purpose of executing the public duty imposed on them, may be mentioned as cases of this character. But in these cases there is no exercise of right of eminent domain, no permanent appropriation of the property to the exclusive use of another, within the spirit of this constitutional provision, *and they are all subject to this limitation, that they are reasonably necessary to accomplish a lawful purpose, are but temporary in their character, and are accompanied with no unnecessary damage."* (Emphasis added.)

*Walther v. Warner,* 25 Mo. 277, 289 (1857).

In the wake of *Rhodes,* supra, the western district of this court has held, in a highway condemnation case, that the pre-condemnation authority of the Missouri Highway & Transportation Commission, set out in § 227.120(13), and § 388.210(1), does not authorize a pre-condemnation soil survey. At p. 473 the court said:

> "The word survey is commonly used to indicate the measurement of land.... A survey is 'an actual examination of the surface of the ground,' ... and 'merely evidence of location and boundary.' [A] survey is an act of viewing and measuring surface areas. Drilling holes and taking rock cores are not activities ordinarily within the ambit of a survey." (Citing authorities.)

*Missouri Highway and Transp. Com'n v. Eilers,* 729 S.W.2d 471 (Mo.App.1987).

The court also said that a soil survey conducted without the consent of the landowner subverts his right to use and enjoy his property in fee simple absolute and was not constitutionally permissible. The court said, at p. 474: "[T]he soil survey amounts to a 'taking' and the Commission may not conduct the soil survey *until it receives Eilers' consent or initiates judicial proceedings and pays the damages for a temporary easement before entering the land."* (Emphasis added.)

Out-state authorities adhere generally to the principle that an entry of the type authorized by *Rhodes* for the purpose of making a survey does not confer upon the entrant complete immunity with respect to injury he may inflict on the premises.

> "A momentary entry for the purpose of a survey is not considered a taking, and may be authorized without compensation whether the survey is preliminary to some public work or is for any other public purpose. There is authority in support of the proposition that even in the absence of an authorizing statute a temporary entry for such purpose constitutes neither a taking nor a trespass. Where, however, in the course of such an entry, unreasonable damage is inflicted, liability may ensue."

Nichols on Eminent Domain, 3d Ed. Vol. 2, § 6.02. See also Restatement of Torts, 2d, § 211, § 214; 26 Am.Jur.2d Em.Dom. § 168, p. 842; 29(a) C.J.S.Em.Dom. § 113, p. 463; 29 A.L.R.3d 1104 (Em.Dom.—Right to enter land for preliminary survey or examination). See also 33 A.L.R.3d 1132 (Award of, or pending proceedings for, compensation for property condemned as precluding action for damages arising from prior trespasses upon it.)

The petition alleged that plaintiff Ralph Pogue gave an employee of KAMO "permission and license" to go upon plaintiffs'

land to conduct a "preliminary centerline survey," but imposed a condition that no trees were to be cut during the survey. It further alleged that Allgeier entered the land to conduct "a survey" and "intentionally and without just cause or excuse cut numerous trees."

"When the scope of the license is exceeded or abused, then the acts of the licensee committed in excess of such authority or after the license is revoked may become a trespass for which the licensee may become liable." *Wright v. Edison,* 619 S.W.2d 797, 803 (Mo.App.1981). The allegations of paragraphs 4 and 5 of the petition are sufficient to plead that Allgeier exceeded the scope of the license, and paragraph 6 alleges that KAMO and Associated authorized Allgeier's act of cutting the trees.

Based upon the unsupported statements in its motion, Associated apparently is arguing that, under the authority of *Rhodes,* supra, it had the power to make a pre-condemnation survey, that the cutting of trees was essential to the making of the survey, and that damages arising from the cutting of the trees will be awarded plaintiffs in the McDonald County condemnation proceeding or proceedings.

This argument ignores these facts: There was no evidence of the contents of the pleadings in the McDonald County cases, no evidence of the location of any right-of-way described in said pleadings, no evidence of the location of said right-of-way, if any, with respect to the trees mentioned in the petition, no evidence that any portion of the damage complained of in the petition is properly recoverable in, and only in, either of the McDonald County cases, and no evidence that it was necessary to cut any trees in conjunction with the making of the survey.

It has been said, "The power of eminent domain does not carry with it the right to enter upon the land of another, commit a trespass covered by [§ 537.340], and in defense to such action claim the power to condemn." *Harris v. L.P. and H. Construction Co.,* 441 S.W.2d 377, 382[8] (Mo.App.1969). See also *Mapco, Inc. v. Williams,* 581 S.W.2d 402, 406–407[6] (Mo.

App.1979), holding that a condemnation action commenced in 1977 "cannot operate by relation back to wipe out the wrongful trespass which occurred in 1976." To similar effect see *Powers v. Hurmert,* 51 Mo. 136 (1872). See also *Citizens Elec. Corp. v. Amberger,* 591 S.W.2d 736, 740[14] (Mo.App.1979), for a situation involving conduct constituting "a tortious destruction of property off of the easement right-of-way." That conduct was properly the subject of a separate tort action and did not constitute conduct for which damages could be recovered by the landowner in a condemnation action.

This court, of course, does not know what evidence plaintiffs will be able to adduce in support of the petition. This court holds that it does not appear that plaintiffs can prove no set of facts in support of the petition which would entitle them to relief. *Ray v. Dunn,* supra. The trial court erred in sustaining the motion to dismiss filed by each defendant and in dismissing the petition with prejudice. The order of December 14, 1987, is hereby reversed and the cause remanded.

HOGAN, MAUS and PREWITT, JJ., concur.