Dear Senator Scott:
This opinion letter is in response to your question asking:
 Is the Missouri control share acquisition statute as provided in Conference Committee Substitute for Senate Substitute for Senate Committee Substitute for House Bill No. 349, Eighty-fourth General Assembly, First Regular Session, applicable to the shares of an issuing public corporation where a person or group acquires a controlling interest in a holding company which is a Delaware corporation which owns or directs the exercise of voting power representing 20 percent or more of the voting power of an issuing Missouri public corporation?
Conference Committee Substitute for Senate Substitute for Senate Committee Substitute for House Bill No. 349, Eighty-fourth General Assembly, First Regular Session (hereinafter referred to as "H.B. 349") was recently enacted by the Missouri General Assembly. The bill was passed by the General Assembly June 15, 1987, and signed by the Governor on August 11, 1987. The provisions in the bill applicable to your question are effective September 28, 1987.
The facts relating to your inquiry are explicit in the question. There is a holding company which is incorporated in the state of Delaware. Apparently the controlling interest in that company is being acquired. The holding company owns shares of a Missouri corporation representing 20 percent or more of the voting power of that corporation. The Missouri corporation is an issuing public corporation as defined under Section 351.015(10) of H.B. 349.
H.B. 349 amended Section 351.407, RSMo 1986. It was intended to closely track the control share acquisitions chapter of the Indiana Business Corporation Law, Indiana Code Section 23-1-42-1 et seq. (hereinafter referred to as "the Indiana Act"). The Indiana Act was recently the subject of a very favorable United States Supreme Court case known as CTSCorporation v. Dynamics Corporation of America, 481 U.S. 69,107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). Therein the United States Supreme Court held that the Indiana law did not violate the Commerce Clause of the United States Constitution and was not preempted under what is known as the Williams Act.
"Control share acquisition" is defined in Section351.015(4) of H.B. 349 to mean "the acquisition, directly orindirectly, by any person of ownership of, or the power to direct the exercise of voting power with respect to, issued and outstanding control shares." (emphasis added.)
The acquisition of a sufficient number of shares of a Delaware holding company which has 20 percent or more of the voting power of a Missouri issuing public corporation is an indirect acquisition of the control shares of the Missouri issuing public corporation. See Section 351.015(4), (5) and (10) of H.B. 349. The holding company will be able to vote the control shares of the Missouri issuing public corporation to the extent the voting rights are conferred pursuant to Section351.407.5 of H.B. 349 by vote of the shareholders of the issuing public corporation. The control shares being held by the holding company would be interested shares under Section351.015(9) of H.B. 349 and, therefore, excluded from vote pursuant to Section 351.407.5(2) (b) of H.B. 349.
With respect to the CTS Corporation case, the court stated:
 So long as each State regulates voting rights only in the corporations it has created, each corporation will be subject to the law of only one State. No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations, including the authority to define the voting rights of shareholders. 95 L.Ed.2d at 85.
Further, the court stated:
 It thus is an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares. A State has an interest in promoting stable relationships among parties involved in the corporations it charters, as well as in ensuring that investors in such corporations have an effective voice in corporate affairs. 95 L.Ed.2d at 86.
The United States Supreme Court recognized that a change of ownership or management may have important effects on the shareholders' interests and it is well within the state's role as an "overseer of corporate governance" to offer an opportunity to shareholders of the State's corporations to decide collectively whether the resulting change in voting control of the corporation, as they perceive it, would be desirable.95 L.Ed.2d at 86-87.
A review of H.B. 349 and the CTS Corporation case indicates that the Missouri law is consistent with the teachings of the United States Supreme Court. Missouri has a valid interest in regulating the affairs of its corporations including but not limited to the indirect acquisition of control shares of an issuing public corporation. Without a doubt if Section 351.407 did not apply to the shares of a subsidiary issuing public corporation, Missouri's ability to regulate the stability of the parties involved, as well as to ensure an effective vote in the corporate affairs, would be impaired. Shareholders have historically been given rights to submit and vote on significant matters regarding corporate governance and policy. Missouri has an interest in providing shareholders of an issuing public corporation an opportunity to review and collectively consider the desirability of a control share acquisition, not only with respect to the protection of the shareholders' investment but also with respect to the protection of the economic and social interests of the community and society involved in this state. Such interest includes employee turnover, relocation, change of business philosophy and direction, management ability, and long-term investment potential, all of which are significant implications for shareholder consideration. The philosophy behind CTSCorporation as enunciated by the United States Supreme Court is applicable to indirect acquisitions under the new Missouri control shares acquisition act. Therefore, the new Missouri act is not preempted by the Williams Act pursuant to the Supremacy Clause of the United States Constitution. The ability of the offerers to change management and operations of the issuing public corporation through acquisition of the holding company's shares may have important effects on the shareholders' interests.
Nothing in Section 351.407 indefinitely delays tender offers or prohibits a tender offerer from consummating an offer prior to the shareholder vote. As the Supreme Court suggested in CTS Corporation, the offerer could condition its tender offer for the holding company's shares upon the condition that the shares of the issuing public corporation in which the holding company holds an interest receive voting rights within a certain period of time. 95 L.Ed.2d at 82. The Supreme Court specifically held that "the possibility that the Indiana Act will delay some tender offers is insufficient to require a conclusion that the Williams Act preempts the Act."95 L.Ed.2d at 83. By analogy, the possibility of delay in some tender offers for holding companies of issuing public corporations should be considered insufficient to require a conclusion that the Williams Act preempts application of Section 351.407 to indirect acquisitions.
Moreover, it is incumbent to determine legislative intent from the plain and ordinary meaning of the words or phrases as they appear in H.B. 349. Section 1.090, RSMo 1986. State exrel. Zoological Park Subdistrict of City and County of St.Louis v. Jordan, 521 S.W.2d 369 (Mo. 1975). When considered in context, the word "indirectly" as used in the definitions of "control share acquisition" and "control shares" was intended by the Missouri legislature to apply to scenarios such as in your request.
Application of Section 351.407 is based on the acquisition,
not the exercise, of voting power. Such application is supported by the language of Section 351.407.1 (". . . control shares . . . acquired in a control share acquisition . . ." [emphasis added]) and by the definitions of "control shares" and "control share acquisition." "Control shares" is specifically defined in Section 351.015(5) to mean "shares that . . . would entitle that person, immediately after acquisition of the shares, directly or indirectly, alone or as part of a group, to exercise or direct the exercise of the voting power . . ." (emphasis added). Furthermore, "control share acquisition" is defined in Section 351.015(4) to mean "theacquisition, directly or indirectly, by the person of ownership of, or the power to direct the exercise of voting power . . ." (emphasis added). Therefore, an acquiring person cannot avoid applicability of Section 351.407, and the protections provided thereunder, by electing not to exercise the voting power upon acquiring it.
Furthermore, the fact that after such an indirect acquisition there may remain corporate formalities or mechanics to complete before actually voting the subsidiary issuing public corporation's shares, such as taking whatever steps may be required for director or officer action necessary to vote such shares, does not mean that the acquiring person is notentitled upon such acquisition to exercise or direct the exercise of the voting power of the issuing public corporation.
Section 351.407 of H.B. 349 as thus interpreted does not restrict either (i) the ability of a person or group to acquire and vote shares of a holding company which is not an issuing public corporation, or (ii) the ability of such holding company to vote shares of corporations which are not issuing public corporations. Only the voting rights of shares of the issuing public corporation are subject to Section 351.407.
Therefore, it is the opinion of this office that the indirect acquisition of an issuing public corporation's shares through the acquisition of a controlling interest in a holding company of a sister state is within the definition of control share acquisition and control shares under Section 351.015(4) and (5), respectively, and is therefore subject to Section351.407 of Conference Committee Substitute for Senate Substitute for Senate Committee Substitute for House Bill No. 349, Eighty-fourth General Assembly, First Regular Session.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General